COMPLETE ELECTRIC COMPANY, INC., Sodrel Truck Lines, Inc., Appellants,

v.

LIBERTY NATIONAL BANK & TRUST COMPANY, Eckart Supply Company, River City Coating Systems, Inc. Citizens Fidelity Bank & Trust Company, Appellees.

No. 10A01-8805-CV-144.

Court of Appeals of Indiana, First District.

Dec. 6, 1988.

J. Gregory Joyner, Clarksville, for appellant and cross-appellee, Complete Elec. Co., Inc.

John Richard Vissing, Jeffersonville, Charles H. Zimmerman, Jr., E. Brian Davis, Greenebaum, Boone, Treitz, Maggiolo, Reisz & Brown, Louisville, for appellee and cross-appellant, Sodrel Truck Lines, Inc.

NEAL, Judge.

### STATEMENT OF THE CASE

This appeal involves a series of suits and countersuits relating to a construction project, mortgages, mechanics liens, and breaches of contract.

We affirm in part and reverse in part.

### STATEMENT OF THE FACTS

The facts most favorable to support the judgment are as follows. Complete Electric Company, Inc. (Complete) entered into a written contract with Sodrel Truck Lines, Inc. (Sodrel) on July 23, 1984, to construct a new office and service building for Sodrel. The contract provided that Complete would furnish all labor and material for the project for a fixed price of $85,118. Because of the creation of a number of change orders, some oral and some written, the parties, in February of 1985, altered the agreement to include all change orders already made, and those contemplated, escalating the contract price to $126,379.38. Reflecting this agreement, Complete sent a resume to Sodrel on March 15, 1985, which stated that previous payments of $88,-390.52 had been made and $28,508.36 was due. A letter accompanied the billing which stated that there remained $10,648 of labor to be completed. Because of the existence of a materialman's claim held by Eckart Supply Company (Eckart), Sodrel issued a check to Complete and Eckart for the $28,508 billing and delivered it to Complete. However, Complete forged Eckart's endorsement on the check and kept all the proceeds.

Complete abandoned the contract on May 17, 1985, after which Sodrel had it completed by others. Thereafter, Complete billed Sodrel for $62,144.26. When Sodrel re-

fused to pay it, Complete filed a mechanics lien, and this action to foreclose the lien followed. Other lienholders and mortgagees, including Eckart, were made parties in order to answer for their interest. Other than Eckart, however, those lienholders' interests form no part of this appeal. Eckart filed a cross-claim against Sodrel on its mechanics lien for materials. Sodrel filed a counterclaim against Complete for breach of contract and for indemnity in the event it became liable for Eckart's claim. The parties filed a pre-trial stipulation that Eckart's lien was valid and that the material bill was $13,513. Evidence at the trial reflected that it had not been paid. Post-trial documents reflected that after judgment was entered against it, Sodrel paid the Eckart lien.

In its action, despite documents it generated reflecting a contrary state of facts, Complete claimed that its contract was a cost-plus arrangement, a fact that Sodrel denied. Complete claims it was entitled to material and labor costs of $142,844.92, plus profit and overhead of $37,853.90, or a total contract price of $180,698.82. After a bench trial, the trial court entered its judgment awarding Complete damages in the sum of $549.33 and attorney fees in the amount of $11,214.40. The court found against Sodrel on its counterclaim for breach of contract against Complete, awarded Eckhart $16,319.40 for its lien plus attorney fees, and entered judgment for Sodrel against Complete for indemnification of the Eckart judgment.

## ISSUES

Both Complete and Sodrel filed motions to correct error and both appeal. Complete presents three issues, which restated by us are as follows:

    I. Whether the trial court erred in determining the amount of damages to award Complete.

    II. Whether the trial court erred in awarding Sodrel judgment for indemnification of the Eckhart lien.

    III. Whether the trial court erred in determining the amount of attorney fees Complete was entitled to recover.

Sodrel presents a single issue:

    I. Whether the trial court erred in awarding Complete any attorney fees.

We will discuss this issue and Complete's third issue together.

## DISCUSSION AND DECISION

### Standard of Review

This court does not weigh the evidence or determine the credibility of witnesses. *Lawrence County Commissioners v. Chorely* (1979), Ind.App., 398 N.E.2d 694. We consider only the evidence most favorable to support the judgment. *Fort Wayne National Bank v. Scher* (1981), Ind.App., 419 N.E.2d 1308. Only when the evidence is without conflict and leads to but one conclusion and the fact finder reaches the opposite conclusion will this court disturb the decision. *Hoosier Insurance Company, Inc. v. Mangino* (1981), Ind.App., 419 N.E.2d 978. Neither party requested special findings of fact, and none were made. In the absence of such, the ruling of the trial court is presumed to be based on findings supported by the evidence and if the judgment is sustainable on any legal theory, it must be affirmed. *Smith v. Bruning Enterprises, Inc.* (1981), Ind.App., 424 N.E.2d 1035.

### ISSUE I: *Damage Award*

■ Complete argues that the contract was a cost-plus contract which totaled $180,698.82 and concludes that it is entitled to damages of $63,799.94. In support of this contention it points to its own evidence and the evidence of its expert witness who described unforeseeable cost overruns for the entire job. Labor escalated from 1142 to 4000 man hours and material cost grew from $54,900 to $84,700. It presented evidence that the contract could not have been completed according to the specifications. It claims that it was not obligated to perform work outside the scope of the contract.

There was also evidence before the court that additional costs were incurred and change orders were made, but the matter was entirely settled in February of 1985 when the contract price was increased to

$126,379. This fact was not only testified to by Sodrel but it was supported by Complete's own documents, billings, and letters. All previous change orders and extra costs were included in the amended final price. Complete's argument, primarily directed to its all or nothing claim for $63,799.94 on a cost-plus basis totally ignores this evidence and asks us to reweigh the evidence and redetermine the credibility of the witnesses.

As to events occurring after February of 1985, the date of the amended price, Complete's argument in its entirety is as follows:

> But after February 6, 1985, the cost of materials from Eckart Supply increased to $59,175.83 or $13,495.83 (almost the exact amount claimed by Eckart Supply in its cross-claim) with many of the changes coming from an employee of Sodrel (See Transcript Volume 6 of 8, Page 927). It appears that the employee of Sodrel was running a tab at Complete's expense and without the knowledge of Complete as to how much.
>
> A review of the written change orders submitted by Complete to Sodrel from February, 1985, to May, 1985, Number 25 through 39 (See Transcript Volume 4 of 8, Page 633,638) demonstrates additional request by Complete for payment in the amount of $6,147.03, for work performed, which is in addition to the increased cost from Eckart Supply for materials in the amount of $13,495.83.

*Appellant's Brief* at 21.

The court could legitimately find that the increased cost of material on a firm price contract was the obligation of the contractor, Complete, and not the obligation of the owner, Sodrel. The change orders referred to as numbers 25 through 39 were all signed by Complete and were not signed by Sodrel, and we are not cited to any evidence that all of the change orders claimed after February 1985, were agreed to. The parties, however, agreed that the $549.33 judgment probably reflected change orders 25 through 30.

Complete has not demonstrated error. We are unable to determine from its brief exactly what happened. As seen, the trial court had before it rather compelling evidence that the contract price had been escalated from $85,118 to $126,379.38 which contract was a firm labor and material contract. Of that amount $116,898.87 had been paid, leaving only $10,648 in the contract as of March 15. From the briefs we cannot tell what percent of the work was done or what had been done after March 15, 1985. Consequently, we find no error.

ISSUE II: *Indemnification*

█ It is axiomatic that where a person who, without fault, has been compelled to pay damages because of the wrongful conduct of another primarily liable may recover from such other for expenditures properly made in the discharge of such liability. 15 I.L.E. *Indemnity* § 5 (1959); 42 C.J.S. *Indemnity* § 20 (1944).

As seen, it is not disputed that Eckart's mechanics lien was valid nor is the amount of the debt disputed. Complete does not even dispute the law of indemnity as stated above. Rather, it makes the following argument:

> Complete would first bring to the court's attention the argument contained in Headnote I. As stated therein, material and labor costs alone totalled $142,844.92 for which Complete was paid only $116,898.88 by Sodrel, leaving an unpaid balance of $25,946.04. Included in the outstanding balance was the amount due the supplier, Eckart Supply, ($13,413.00), from Complete for which Complete freely admitted owing and so stipulated. (See Transcript Volume 3 of 8, Page 465, 466). Also as stated herein, Complete received a revised material cost price from Eckart Supply in February, 1985, in the amount of $45,680.00. Between February, 1985 and May, 1985, the total material costs from Eckart Supply increased to $59,175.83 for an increase of $13,495.13. Many of these materials during this period of time were ordered by an employee of Sodrel, without the knowledge of Complete. As the unrebutted evidence at trial demonstrated, the amount due Complete from Sodrel, ex-

ceeded the amount owing the supplier and Complete was not paid for these materials by Sodrel.

Complete also produced unrebutted evidence at trial that it submitted pay requests to Sodrel in the total amount of $132,271.18 and was paid $116,898.88 leaving a balance due from these pay requests of $15,818.30. (See Transcript Volume 5 of 8 Page 717, 719). Even if the court were to find that this should be the amount properly due Complete, it exceeds the amount owing the supplier; for which Complete stipulated it owed the supplier, and should therefore come out of any recovery by it.

*Appellant's Brief* at 24–25.

From this presentation we believe that Complete is arguing that since it had a cost-plus contract, any debt owed by it to Eckart was legitimately passed along to Sodrel who would be ultimately bound to pay it. Therefore, it has no claim for indemnity. Additionally, Complete seems to claim that failure on the part of Sodrel to pay the $62,144.26 was fault within the meaning of the authorities. This issue is directly connected to Issue I. Complete merely asks us here to reweigh the evidence and redetermine the credibility of the witnesses. The trial court could and did find from the evidence that a firm price contract existed and Sodrel became obligated for a debt properly owed by Complete. Therefore, indemnification was proper.

## ISSUE III: *Attorney Fees*

Complete argues that the amount of attorney fees awarded to it is inadequate. In its case-in-chief the only evidence presented by Complete regarding attorney fees was recited by an officer of the company who merely testified that Complete had paid attorney fees of $3,743.75 and $6,414, which amounts did not include attorney fees for the trial. Those trial fees would be calculated at $75 per hour. No objection was made to this evidence nor did any attorney testify that such fees were reasonable. Based upon that evidence, the trial court allowed $11,314 attorney fees. After the trial and after the judgment was

entered, Complete submitted to the court an ex parte affidavit claiming proper attorney fees were $15,355. Complete has presented us no citation of authority explaining why an ex parte affidavit filed long after the trial is over and after judgment is rendered can supplant evidence presented at the trial. We know of no such authority. We find no error.

■ In turn Sodrel does not complain that no evidence of value was presented, that an $11,214 attorney fee awarded to collect a $549.33 judgment might be excessive, or that a post-trial affidavit is no substitute for evidence presented at trial. Instead, it argues that its judgment of $16,319.40 completely offset Complete's judgment of $549.33, and therefore Complete had no judgment upon which to base attorney fees. We will address only that contention here.

Ind.Rules of Procedure, Trial Rule 13(C) provides:

A counterclaim may or may not diminish or defeat the recovery sought by the opposing party. It may claim relief exceeding in amount or different in kind from that sought in the pleading by the opposing party.

Trial Rule 13(M) provides further:

Satisfaction of a judgment or credits thereon may be ordered for sufficient cause, upon motion and notice. "Credits" include any counterclaim which tends to diminish or defeat the judgment, or any counterclaim where it or the opposing claim related to payment of or security for the other.

1 W. HARVEY, INDIANA PRACTICE at 705 (1987) addresses T.R. 13(C). That text recites that T.R. 13(C) did not alter existing law. It states as follows:

Where a counterclaim established at trial exceeds the plaintiff's claim, defendant is entitled to a judgment for the excess *Gordon v. George* 12 Ind. 408 (1859); *Love v. Oldham* 22 Ind. 51 (1864).

The statute governing attorney fees recoverable for the enforcement of mechanics liens is as follows:

32–8–3–14. Attorney's fees—When denied.—In all suits brought for the enforcement of any lien under the provisions of this act [32–8–3–1—32–8–3–15], if the plaintiff or lienholder shall recover judgment in any sum, he shall also be entitled to recover reasonable attorney's fees, which shall be entered by the court trying the same, as a part of the judgment in said suit, however, attorney fees shall not be recovered as part of the judgment against the property owner in any suit in which it is shown that the contract consideration for such labor, material or machinery has been paid, in fact, by the property owner or party for whom the improvement has been constructed.

The rules clearly provide that where a judgment on a counterclaim exceeds the judgment on the original claim, that latter judgment is defeated. IND.CODE 32–8–3–14 permits attorney fees only for a valid "judgment in any sum." Here, regardless of the form rendered, Sodrel received a judgment in excess of Complete's judgment wholly defeating the latter. Thus, Complete is not entitled to any attorney fees. Complete makes no attempt to rebut the above authorities or argument but in its eight line argument cites only IND.CODE 32–8–3–14.

This cause is reversed as to the issue of attorney fees, and the trial court is ordered to amend its judgment and deny Complete any attorney fees. In all other respects, this cause is affirmed.

JUDGMENT REVERSED IN PART AND AFFIRMED IN PART.

RATLIFF, C.J., and SHIELDS, P.J., concur.