Perry COLEMAN, et al., Appellants,

v.

STERLING CASTINGS CORPORATION, et al., Appellees.

In re BLUFFTON CASTINGS CORPORATION f/k/a Sterling Castings Corporation, et al., Debtor.

Civ. No. 1:98CV109.

United States District Court, N.D. Indiana, Fort Wayne Division.

Aug. 25, 1998.

---

Elliott D. Levin, Rubin and Levin, Indianapolis, IN, for Plaintiffs.

Karen A. Courtney, Warsco Brogan and Strunk, Stephen L. Fink, Barnes and Thornburg, Fort Wayne, IN, Douglas W. Pool, Foley & Pool, Indianapolis, IN, for Defendants.

Richard J. Swanson, Macey Macey and Swanson, Indianapolis, IN, amicus.

## ORDER

LEE, Chief Judge.

This matter is before the court on an appeal from the Bankruptcy Court of the Northern District of Indiana, Fort Wayne Division. On April 8, 1998 the appellants filed a notice of bankruptcy appeal with this court, appealing the Bankruptcy Court's February 20, 1998 order in this cause. The appellants filed their opening brief on May 22, 1998, and the International Union, UAW, filed an amicus curiae brief on this same date. The appellee filed its response brief on June 8, 1998, and the appellants replied on July 10, 1998. For the following reasons, the decision of the Bankruptcy Court will be affirmed.

### · Discussion

The parties have agreed that the issues presented for review are conclusions of law, which are subject to de novo review by this court. Fed.R.Bankr.P. 8013.

The pertinent background facts of this case are as follows. On January 27, 1997, Bluffton Castings Corporation f/k/a Sterling Castings Corporation (the "Debtor") filed a voluntary Chapter 11 petition in the United States Bankruptcy Court, Northern District of Indiana, Fort Wayne Division. On July 11, 1997, the Appellants (the "Employees") filed their Complaint for Declaratory Judgment regarding the extent, validity and priority of liens. On July 13, 1997, Debtor's Chapter 11 proceeding was converted to a Chapter 7 proceeding. On September 16, 1997, Norwest Business Credit, Inc. ("Norwest"), a defendant in the bankruptcy court action, filed a pre-trial statement wherein Norwest indicated its intent to file a motion for judgment on the pleadings.

On September 23, 1997, the Employees filed an Amended Complaint for Declaratory Judgment regarding the extent, validity and priority of liens. The Amended Complaint consists of seven counts: I. Termination Without Notice Claim; II. Vacation Pay Claims; III. Health Care Expense Claims; IV. Pension Claims; V. Disability Claims; VI. EE Bonds; and VII. Equitable Allocation. Each of these seven counts assert claims based upon either (1) breach of the collective bargaining agreement; or (2) violation of the notice provisions of the Worker Adjustment and Retraining Notification ("WARN") Act. The Employees claim that their remedies for the alleged breach of contract and WARN Act violations include mechanic's liens, and seek a determination of the priority of any such liens.

Norwest filed its Amended Answer and Motion for Judgment on the Pleadings on October 3, 1997. After submission of briefs, the Bankruptcy Court entered its Order and Decision on February 20, 1998 (the "Deci-

sion"). The Bankruptcy Court dismissed Counts I through V of the Amended Complaint, ruling that such claims were preempted by application of the Labor–Management Relations Act ("LMRA") and the WARN Act. The Court declined to address the preemptive effect of ERISA on those counts, based upon its holding that the LMRA and the WARN Act preempted the Employees' claims. The Bankruptcy Court also denied Norwest's motion as to Count VI.

■ This court will first address the appropriateness of WARN Act preemption. The WARN Act requires certain employers to give their employees at least 60 days advance notice of a plant closing or mass layoff. *See* 29 U.S.C. § 2102(a). If the employer fails to give such notice, the employees may sue for back pay, lost benefits, costs and attorney fees. 29 U.S.C. § 2104(a). The Act further states that "[t]he remedies provided for in this section shall be the exclusive remedy for any violation of this chapter." 29 U.S.C. § 2104(b). However, § 2105 of the Act provides that:

> The rights and remedies provided to employees by this chapter are in addition to, and not in lieu of, any other contractual or statutory rights and remedies of the employees, and are not intended to alter or affect such rights and remedies, except that the period of notification required by this chapter shall run concurrently with any period of notification required by contract or by any other statute.

The Employees argued to the Bankruptcy Court that this provision permits the enforcement of a WARN Act claim for damages through a mechanics lien created under state law. Norwest, however, has taken the position that § 2104(b) precludes the use of a mechanics lien to enforce a claim for WARN Act damages. The Bankruptcy Court granted Norwest's motion as to the portions of Counts I and IV that seek relief under the WARN Act.

The Bankruptcy Court construed § 2104(b) and § 2105 so as to give effect to both sections:

> There is a much more reasonable interpretation of the interplay between § 2105 and § 2104(b) than the one Plaintiffs advance.

As stated by § 2104(b), the only remedies for a violation of the WARN Act are those specified by federal law. Nonetheless, § 2105 recognizes that the WARN Act may not be the only remedy for the situation addressed by the statute. Thus, when the same facts that give rise to a WARN Act claim also create other claims against an employer, the employee is not precluded from bringing them. For example, and employer's failure to give adequate notice of a plant closing may also give rise to a contractual claim for damages or an independent claim for damages under state law. The employee is not precluded from pursuing those claims simply because the employer's actions *also* give rise to a claim under the WARN Act.

Decision at 5.

The Employees continue to rely on *Frymire v. Ampex Corporation,* 61 F.3d 757 (10th Cir.1995), in support of their position that a mechanics lien is a permissible remedy for a claim for WARN Act damages. In *Frymire,* the Tenth Circuit held that prejudgment interest is recoverable on WARN Act damages. The Employees contend that this case is an example of the use of a statutory remedy in addition to the remedies set forth in the Act itself. As the Bankruptcy Court recognized, however, prejudgment interest does not represent an additional remedy. Rather, prejudgment interest simply recognizes the time value of money and compensates the prevailing party for losses attributable to the delay inherent in the conflict resolution proceedings. *In re U.S.A. Diversified Products, Inc.,* 100 F.3d 53 (7th Cir.1996); *Partington v. Broyhill Furniture Industries, Inc.,* 999 F.2d 269, 274 (7th Cir. 1993). The *Frymire* court also specifically noted that the prejudgment interest was calculated pursuant to federal statute and not by Colorado state law. *Frymire,* 61 F.3d at 774, n. 16.

The Employees also rely on *Local 397, Internat'l Union of Electronic,· Electrical, Salaried, Machine and Furniture Workers, AFL–CIO v. Midwest Fasteners, Inc.,* 763 F.Supp. 78 (D.N.J.1990). In *Midwest Fasteners,* the district court suggested that, in an appropriate case, a federal preliminary injunction may be issued on behalf of claim-

ants of WARN Act violations. However, this decision was supported by reliance on a federal statute, not state law. *Id.* at 81. More recently, the Second Circuit has held that the preemptive language of § 2104(b) precludes a preliminary injunction (even under federal law) to WARN Act claimants. *Local 217, Hotel & Restaurant Emp. Union v. MHM, Inc.*, 976 F.2d 805 (2nd Cir.1992). Another court likewise stated that "[i]t has been held that the damages, remedies, and civil penalties provided for in § 2104 are the only possible remedies that may be obtained under WARN." *Automobile Mechanics' Local No. 701 of the Internat'l Assoc. of Machinists & Aerospace Workers, AFL–CIO v. Santa Fe Terminal Services, Inc.*, 830 F.Supp. 432, 434 (N.D.Ill.1993), citing *MHM*, 976 F.2d at 808–09.

The Employees next seek to recategorize their requested remedy (state mechanic liens), as a remedy for failure to promptly or voluntarily pay wages, rather than a remedy for a WARN Act violation (*i.e.* failure to give advance notice of plant closing). Clearly, the Employees' Amended Complaint cites the WARN Act as the basis for their claims, and Counts I and IV do not even assert a claim for failure to promptly or voluntarily pay wages. In fact, Norwest points out that the Employees have been paid in full for work actually performed.

There is no doubt that the Bankruptcy Court correctly granted judgment on the pleadings on the basis that Counts I and IV are preempted by the WARN Act.

■ The Bankruptcy Court also held that Counts I, II, III, IV, and V are preempted by § 301 of the LMRA. Section 301 provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties. 29 U.S.C. § 185(a).

While this provision refers only to jurisdiction, it has been interpreted as authorizing federal courts to develop a federal common law for the interpretation and enforcement of collective bargaining agreements ("CBA"). *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 1880, 100 L.Ed.2d 410 (1988) (citing *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 917, 1 L.Ed.2d 972 (1957)). The underlying reason for doing so is to promote uniformity in the interpretation of contract terms, which, in turn promotes the collective bargaining process. *See, Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of America v. Lucas Flour Co.*, 369 U.S. 95, 82 S.Ct. 571, 576–77, 7 L.Ed.2d 593 (1962).

■ Section 301 has been held to preempt claims "founded directly on ... or 'substantially dependent on analysis of a collective bargaining agreement.' " *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 2431, 96 L.Ed.2d 318 (1987) (quoting *Int'l Bhd. of Elec. Workers v. Hechler*, 481 U.S. 851, 107 S.Ct. 2161, 2166–67, 95 L.Ed.2d 791 (1987)); *Antol v. Esposto*, 100 F.3d 1111 (3rd Cir. 1996). Where state law claims are concerned, preemption turns on whether the resolution of the claims depends on the meaning of, or requires the interpretation of, a collective bargaining agreement. Claims that are independent of the collective bargaining agreement, *Livadas v. Bradshaw*, 512 U.S. 107, 114 S.Ct. 2068, 2078, 129 L.Ed.2d 93 (1994), or which "tangentially involv[e] a provision of a collective bargaining agreement," *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904–11, 85 L.Ed.2d 206 (1985), are not preempted. *See also Atchley v. Heritage Cable Vision Associates*, 101 F.3d 495 (7th Cir.1996).

The Employees argued to the bankruptcy court that their state law mechanics lien rights are independent of, or only tangentially related to, the collective bargaining agreement. Thus, the issues to be determined are: (1) whether the Employees' claims are founded on the CBA or are state law claims independent of the CBA; and (2) if the Employee's claims are independent state law claims, whether resolution of those claims is substantially dependent on an analysis of the CBA.

There can simply be no doubt that the Employees' claims are founded on the CBA.

Counts I through V allege that the Debtor breached a contract with the Employees by failing to provide notice of termination, and by failing to provide vacation, health care, pension and disability benefits. A review of the Amended Complaint and the Exhibits clearly reveals that the CBA is the basis for each of the Employees' claims. In fact, the Employees attached several pages of the CBA to their Amended Complaint. Moreover, the CBA itself provides that it sets forth the whole agreement between the parties thereto.

As noted above, LMRA preemption is applicable when the claim is founded on a collective bargaining agreement or the claim requires an analysis of a collective bargaining agreement. The District Court for the Southern District of Indiana recently discussed LMRA preemption and held:

> The Supreme Court has recognized two types of claims that § 301 completely preempts. First, § 301 displaces state law claims founded directly on rights created by collective bargaining agreements. *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists*, 390 U.S. 557, 560, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) (suit in state court to enforce "no strike" clause in collective bargaining agreement necessarily arose under federal law). In its most obvious application, § 301 displaces state law breach of contracts claims where the contract allegedly breached is a collective bargaining agreement.
>
> \*    \*    \*    \*    \*    \*
>
> Second, § 301 completely preempts claims that do not specifically allege a violation of a collective bargaining agreement—or even necessarily mention the existence of a collective bargaining agreement—if the claims nonetheless are substantially dependent on analysis of a collective-bargaining agreement..' *International Brotherhood of Electrical Workers v. Hechler*, 481 U.S. 851, 859 n. 3, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987).

*Pauley v. Ford Electronics and Refrigeration Corp.*, 941 F.Supp. 794 (1996).

The converse of the first prong of the LMRA preemption analysis is determining whether the claim asserted is a state law claim independent of the CBA. The Employees assert that their liens arise as a cause of action under state law entirely independent of the CBA. The Employees rely on *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). *Lingle* recognizes a distinction involving non-negotiable rights conferred on individual employees as a matter of state law that provide minimum substantive guarantees to individual workers. The *Lingle* Court identified two examples of such laws: state anti-discrimination and retaliatory discharge laws. 486 U.S. 414, 108 S.Ct. at 1887. The Court stated this principle as follows:

> The operation of the antidiscrimination laws does, however, illustrate the relevant point for § 301 preemption analysis that the mere fact that a broad contractual protection against discriminatory—or retaliatory—discharge may provide a remedy for conduct that co-incidentally violates state law does not make the existence or the contours of the state law violation dependent upon the terms of the private contract. For even if an arbitrator should conclude that the contract does not prohibit a particular discriminatory or retaliatory discharge, that conclusion might or might not be consistent with a proper interpretation of state law. In the typical case a state tribunal could resolve either a discriminatory or retaliatory discharge claim without interpreting the "just cause" language of a collective-bargaining agreement.

*Lingle*, 486 U.S. 399, 108 S.Ct. at 1877–78.

As noted, the issue here is whether the Indiana mechanic's lien statute constitutes independent substantive state law protection. Whether the Employees' claim under the statute is independent depends upon "the legal character of a claim" as being independent of rights under the collective-bargaining agreement. *Livadas*, 512 U.S. at 109–10, 114 S.Ct. 2068. The lack of independence from the CBA is readily apparent from reviewing each of the counts of the Employees' Amended Complaint. Count I, paragraph 30, states that "the total claim of the Union Employees related to both the WARN Act claim as well

as the contractual claim for termination without notice is not less than $1,080,408.55." Amended Complaint, at 9. Likewise, Counts II through V assert claims for unpaid vacation pay, health care expenses and pension and disability contributions. Such claims arise, if at all, under the CBA.

Another method of demonstrating a lack of independence is by reviewing the nature of the state statute which the Employees assert is the independent source of their substantive claim. The Employees cite to the Indiana mechanic's lien statute as a state law which provides minimum substantive guarantees to individual workers. However, the mechanic's lien statute does not create an independent substantive claim for wages, vacation pay, health care expenses or pension contributions. Rather, a worker's ability to utilize the statute is dependent upon an underlying contractual right.

■ Indiana law provides that lien claims attach only to the extent amounts are owed under a contract. *Clark's Pork Farms v. Sand Livestock Systems, Inc.*, 563 N.E.2d 1292, 1298–99 (Ind.Ct.App.1990). A similar mechanic's lien statute was recently addressed in the preemption context in *Carpenters Southern California Administrative Corporation v. El Capitan Development Company*, 223 Cal.App.3d 1034, 243 Cal. Rptr. 132 (1988). In *Carpenters*, the Court stated:

> Although state law providing for mechanic's liens is a special statutory collection alternative, that remedy cannot be divorced from the substantive contractual rights which create the debt. To be effective, the lien claim depends upon the validity and consequences of an agreement of some sort. In this instance, a labor agreement is the subject matter. Failure of one party to the plan to make contributions result in the denial of benefits to the others. Federal remedies are provided. Mechanic's lien rights are omitted.

*Carpenters*, 223 Cal.App.3d at 1040, 243 Cal. Rptr. 132.

Indiana courts have similarly interpreted the relationship between Indiana's mechanic's lien statute and the underlying contract claim. *See Korellis Roofing, Inc. v. Stolman*, 645 N.E.2d 29 (Ind.Ct.App.1995); *Clark's Pork Farms v. Sand Livestock Systems, Inc.*, 563 N.E.2d 1292 (Ind.Ct.App.1990). In *Korellis Roofing*, the court identified the three circumstances in which the amount of a mechanic's lien has been at issue: (1) quasi-contract, for a claimant's improvement in value to property; (2) sub-contractor claims for the reasonable value of work and material; and (3) where a contract exists between the contractor and the property owner. *Korellis Roofing*, 645 N.E.2d at 31. In *Korellis Roofing*, the Court determined the third circumstance was at issue, and quoted *Clark's Pork Farms* for the proposition that "the mechanic's lien attaches to the Clark's real estate only to the extent Gene owes Sand on the contract." 645 N.E.2d at 32. The essential point is that the Indiana's mechanic's lien statute does not create a claim. The lien attaches to the property only to the extent amounts are owed under a contract. The lien claim is not independent of the underlying contract. Under this analysis, it is clear that the contract giving rise to the Employees' claims is the CBA and, therefore, § 301 preempts the Employees' state law liens. Accordingly, the decision of the Bankruptcy Court granting Norwest's motion on Counts I through V will be affirmed.

The bankruptcy court declined to grant Norwest's judgment on the pleadings as to Count VI of the Employees' Amended Complaint. Norwest's contention before the bankruptcy court was that the Employee Retirement Income Security Act ("ERISA"), preempted Counts I through VI of the Employees' Amended Complaint. As Counts I through V had been ruled on earlier in its order, the bankruptcy court only considered Count VI vis a vis the ERISA preemption statute.

In their Appellants' Brief, filed with this court on May 22, 1998, the Employees have conceded that each of their Counts II, III, V, and VI do not rely on an alleged violation of the provisions of ERISA. *See* Brief at 15–18. Clearly, therefore, as Norwest notes in its responsive brief, ERISA and ERISA preemption is not applicable to Counts II, III, V and VI. Consequently, the bankruptcy

court's ruling that Count VI is not preempted by ERISA will be affirmed.

*Conclusion*

For all of the foregoing reasons, the Decision of the Bankruptcy Court is hereby AFFIRMED.