FARAH, LLC, Barrington Jewels,
Inc., Appellant–Plaintiff,

v.

ARCHITURA CORPORATION,
Appellee–Defendant.

No. 49A05–1012–PL–793.

Court of Appeals of Indiana.

Aug. 12, 2011.

Michael T. McNally, Daniel J. Gibson, Delk McNally, LLP, Indianapolis, IN, Attorneys for Appellant.

John M. Stuckey, Robert R. Elder, Stuart & Branigin, LLP, Indianapolis, IN, Christopher E. Baker, Bradley Buchheit, Hostetler & Kowalik, P.C., Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Farah, LLC, and Barrington Jewels, Inc., (collectively "Farah") appeal the trial court's judgment in its breach of contract action against Architura Corporation ("Architura") and Architura's counterclaim on a mechanic's lien. We affirm in part, reverse in part, and remand.

### Issues

The restated issues before us are:

I. whether the trial court awarded excessive damages to Architura on its mechanic's lien claim against Farah;

II. whether the trial court properly awarded no damages to Farah on its claim that Architura had failed to inspect a building renovation project that Farah had hired Architura to oversee; and

III. whether the trial court awarded inadequate damages to Farah on its remaining breach of contract claims against Architura.

## Facts

Farah, under the Barrington Jewels name, operates a high-end jewelry store business. Farah is owned by Mitra and Goel Ahdoot. In 2003, Farah purchased a former O'Charley's restaurant in Indianapolis with the intent of renovating it into a Barrington Jewels location. Farah entered into a contract with Architura, an architectural firm, to prepare designs for the renovation, as well as to secure bids for the project and oversee construction. The contract, signed by Goel at the end of February 2003, stated that Architura would be paid $40,000 for those services, and that it could collect an additional $1500 in reimbursable expenses. The contract also provided:

Work Not Included in scope and fee

1. Planning work to move large entry sign

2. Interior furniture design of loose furniture items

3. Security system design

4. Contractor's permits

5. Major changes to building design after approval of schematic documents. (Major means moving exterior walls or substantial structural change.)

We can provide these services, but added fee would be required.

Ex. A.

There were some issues early in the design and bidding process with respect to keeping the cost of the renovation within Farah's bank-established budget. Mike Conly of Architura submitted a renovation plan to the Ahdoots in early April 2003, but they requested a number of changes to those plans for budgetary reasons. Conly revised the plans, per the Ahdoots' comments, and sent the plans out for bid. Still, the bids came in well over Farah's budget.

Further negotiations ensued with one of the bidders, Capitol Construction ("Capitol"), to bring the cost within Farah's budget. Eventually, Conly reported to the Ahdoots that Capitol would be able to complete the project for an acceptable amount of $747,000. To reach this amount, however, Conly evidently agreed to the removal of several design elements that later had to be added back into the renovation. Some of the items included granite countertops, the moving of an HVAC unit, extra concrete and outlets, and steps at the front of the building. The steps cost an additional $8000, of which Architura paid $5000. Although the total cost of all these items was approximately $55,000, based on change orders that were later executed for them, there is no evidence, aside from the steps, that this cost exceeded what it would have cost for the items if they had been included in the original construction contract.

During the course of construction, disputes arose between Farah and Architura with respect to payment. On August 11, 2003, Architura filed a mechanic's lien against the property. This lien was released after Farah paid a total of $34,000 to Architura. On December 9, 2003, Architura filed a second mechanic's lien, claiming that it had provided services to Farah well in excess of those contemplated by the parties' original contract. To obtain release of this lien against the property, Farah paid $50,300 to the trial court clerk in September 2004.

Various problems with respect to construction also arose. Among other things, the interior lighting design became inadequate when pillars inside the store had to be moved, interfering with the lighting. The roof did not drain properly, resulting in multiple water leaks into the building. The bottom of the exterior walls were not properly insulated, resulting in heat escap-

ing and potential insect infiltration. As mentioned, steps had to be added to the front of the building that were not originally accounted for. Access to both the roof of the building and outdoor signage was lacking or inadequate.

Architura prepared a "certificate of substantial completion" for the renovated building in November 2003. Such a certificate means that a building is ready for occupancy, but that further matters, detailed in a "punch list," must still be addressed by the contractor. Architura first prepared a letter certifying that Capitol had completed the items on the punch list on April 7, 2004. This letter would have authorized the bank financing the renovation to release the remaining funds it was holding in escrow—$38,000—to Capitol as final payment for the project. However, a banker learned that no one from Architura had actually inspected the building before issuing the certificate of completion. Subsequently, Conly did inspect the premises. On April 21, 2004, Conly issued a second letter indicating that, subject to some exceptions, the items on the punch list had been completed. Additionally, the bank hired someone to conduct an independent inspection of the premises, and after that had occurred it released the final funds to Capitol.

On November 9, 2007, Farah filed suit against Architura, alleging that it was liable for numerous alleged deficiencies in the renovation project. Architura filed a counterclaim against Farah related to the December 2003 mechanic's lien, seeking to recover the $35,300 in additional professional fees, plus prejudgment interest and attorney fees.

Capitol also was a party to the lawsuit below. However, the parties have not explained, nor does the CCS indicate, precisely what is the status of any action between Capitol and Farah and/or Capitol and Architura. The last mention of Capitol in the CCS appears to be that it filed a motion to dismiss and demand for arbitration, which the trial court denied on May 19, 2010. Architura subsequently filed a motion to consolidate cases for trial or, in the alternative, for leave to amend their answer to assert a non-party defense as to Capitol. The trial court granted the motion for leave to amend at the beginning of the Farah–Architura bench trial, which commenced on June 7, 2010.

The trial court entered judgment, accompanied by some sua sponte findings, on September 29, 2010. The trial court specifically found that Architura had breached its contract with Farah with respect to failure to design adequate access to outdoor signage and the roof, the interior lighting design, and exterior wall insulation design. With respect to the roof leakage, the trial court found that that problem was the result of both construction deficiencies by Capitol and design deficiencies by Architura. The trial court found Farah was entitled to compensation from Architura for these breaches in the amount of $64,310, plus $35,147 in prejudgment interest, for a total of $99,457.

With respect to Architura's counterclaim on its mechanic's lien, the trial court made no specific findings but found Architura was entitled to collect an additional $26,166 in professional fees, plus prejudgment interest of $14,129 and attorney fees of $15,000, for a total amount of $55,295. The trial court set off this amount from the judgment in Farah's favor, resulting in a net judgment against Architura of $44,162. In light of this award, the trial court ordered the $50,300 Farah had deposited with the trial court clerk in September 2004 to be released to Farah. Farah filed a motion to correct error, which the trial court denied. Farah now appeals; Architura does not cross-appeal.

## Analysis

 The trial court here entered an order that contained sua sponte findings. The order does not contain any purported conclusions of law. Sua sponte findings control only the issues they cover, and a general judgment standard of review will control as to the issues upon which there are no findings. *In re Trust Created Under Last Will & Testament of Mitchell,* 788 N.E.2d 433, 435 (Ind.Ct.App.2003). "A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence." *Id.* In reviewing a judgment, we will neither reweigh the evidence nor judge the credibility of the witnesses. *Id.*

### I. Mechanic's Lien

We first address Farah's contention that the trial court erred in awarding $26,166 plus $15,000 in attorney fees to Architura on its mechanic's lien counterclaim against Farah. Although the lien technically was released when Farah deposited $50,300 with the trial court clerk in September 2004, the parties agree that this issue is governed by the statutes and case law governing mechanic's liens. The general mechanic's lien statute provides in part:

> (a) A contractor, a subcontractor, a mechanic, a lessor leasing construction and other equipment and tools, whether or not an operator is also provided by the lessor, a journeyman, a laborer, or any other person performing labor or furnishing materials or machinery, including the leasing of equipment or tools, for:
>
> > (1) the erection, alteration, repair, or removal of:
> >
> > > (A) a house, mill, manufactory, or other building …
>
> may have a lien as set forth in this section.

> (b) A person described in subsection (a) may have a lien separately or jointly:
>
> > (1) upon the house, mill, manufactory, or other building, bridge, reservoir, system of waterworks, or other structure, sidewalk, walk, stile, well, drain, drainage ditch, sewer, cistern, or earth:
> >
> > > (A) that the person erected, altered, repaired, moved, or removed …
>
> to the extent of the value of any labor done or the material furnished, or both, including any use of the leased equipment and tools.

Ind.Code § 32–28–3–1. Indiana Code Section 32–28–11–1 expressly extends the benefits of mechanic's liens to registered architects, such as Conly at Architura.

There is no dispute that Architura could enforce a mechanic's lien against Farah's property for its work in connection with the building renovation. The sole question is the extent of recovery Architura could seek. Farah argues that Architura could seek no more compensation than the contract between the two parties provided for, while Architura responds that it is entitled to collect the full reasonable amount of the services it provided for the renovation, regardless of what the contract expressly stated.

 It is true that the existence of a contract with a property owner is not a requirement under Indiana law for the creation of a mechanic's lien. *See Saint Joseph's College v. Morrison, Inc.,* 158 Ind.App. 272, 284–85, 302 N.E.2d 865, 873 (1973). This, however, does not answer the question of how much may be recovered under a mechanic's lien. On that point, the United States District Court for the Northern District of Indiana summarized Indiana law in *Coleman v. Sterling Castings Corp.,* 224 B.R. 85 (N.D.Ind. 1998). After reviewing pertinent cases, the court concluded, "Indiana law provides

that [mechanic's] lien claims attach only to the extent amounts are owed under a contract." *Coleman,* 224 B.R. at 90. Specifically, the court noted three circumstances in which the amount of a mechanic's lien has been at issue: "(1) quasi-contract, for a claimant's improvement in value to property; (2) sub-contractor claims for the reasonable value of work and material; and (3) where a contract exists between the contractor and the property owner." *Id.* (citing *Korellis Roofing, Inc. v. Stolman,* 645 N.E.2d 29, 31 (Ind.Ct.App.1995)). When the third circumstance arises, the amount of the mechanic's lien is measured by the amount due under the contract. *Id.* (citing *Korellis,* 645 N.E.2d at 32). "The lien claim is not independent of the underlying contract." *Id.; see also Peter & Burghard Stone Co. v. Marion Nat. Bank of Marion,* 198 Ind. 581, 587, 153 N.E. 472, 474 (1926) (holding that where party had contract with landowner and had been paid all amounts owing under the contract, party could not seek via a mechanic's lien additional amounts allegedly owed for work performed); *Walker v. Statzer,* 152 Ind.App. 544, 551, 284 N.E.2d 127, 132 (1972) (holding that "where the principal contractor has furnished labor and materials for a price agreed upon by him and the owner of the property, the amount of the lien is measured and limited by the agreed price").

▄ Here, there was a contract for a fixed price between Farah and Architura. Thus, under well-established Indiana law, Architura could seek recovery for a mechanic's lien only to the extent of any balance owed under that contract. The maximum fixed price the contract allowed Architura to be paid was $41,500 for fees and expenses. Farah had paid Architura a total of $34,000, leaving only $7500 unpaid under the contract, not $26,166 as the trial court awarded Architura.

There are provisions under the contract by which Architura could demand additional payment from Farah, above and beyond the $41,500 set price. At trial, Farah's attorney extensively questioned Conly as to whether any of the additional fees Architura was seeking could be justified under any of those provisions, and most particularly under the provision for "[m]ajor changes to building design after approval of schematic documents. (Major means moving exterior walls or substantial structural change.)" Ex. A. There was considerable confusion as to whether any of Architura's additional design work occurred "after approval of schematic documents." *Id.* In fact, when Architura's attorney cross-examined Conly on the mechanic's lien issue, he was only asked whether there remained a $7500 unpaid balance under the contract. There was no exploration of whether any of Architura's additional fees above that amount were contractually justified.

▄ On appeal, Architura makes no argument that any fees above $7500 are justified under any of the contractual provisions for additional payment. Farah argued in its opening brief that none of those provisions applied here, and Architura failed to respond to that argument. "An appellee's failure to respond to an issue presented by an appellant allows for reversal upon the appellant's showing of prima facie error on that issue." *Riggin v. Rea Riggin & Sons, Inc.,* 738 N.E.2d 292, 308 (Ind.Ct.App.2000). Under such circumstances, we need not undertake the burden of developing an argument on the appellee's behalf. *Trinity Homes, LLC v. Fang.* 848 N.E.2d 1065, 1068 (Ind.2006). The trial court also made no finding explaining how or why any additional payment above $7500 might have been justified. We will not endeavor to make an argument on Architura's behalf that such

additional payment was justified, given the unclear nature of the evidence and issues of contract interpretation that are presented here. We conclude the trial court erred in awarding Architura anything above $7500 on its mechanic's lien claim against Farah for its fees and expenses, as that was the outstanding balance due under the contract between the parties.

■ We now address the matter of attorney fees under the mechanic's lien. Indiana Code Section 32–28–3–14(a) provides, "in an action to enforce a lien under this chapter, a plaintiff or lienholder who recovers a judgment in any sum is entitled to recover reasonable attorney's fees. The court shall enter the attorney's fees as a part of the judgment." Although the statute uses the word "shall," this court has repeatedly held that "if a judgment on a counterclaim exceeds the judgment on the [mechanic's lien] claim, the latter judgment is defeated and the lienor is not entitled to attorney's fees." *Clark's Pork Farms v. Sand Livestock Systems, Inc.,* 563 N.E.2d 1292, 1300 (Ind.Ct.App.1990) (citing *Complete Elec. Co. v. Liberty Nat'l Bank and Trust Co.,* 530 N.E.2d 1216 (Ind.Ct.App. 1988)). In other words, where a property owner receives a judgment in excess of a mechanic's lien claim, the mechanic's lien claimant would not receive a valid "judgment in any sum" and the mechanic's lien is "wholly" defeated, meaning that the mandatory attorney fees provision of Indiana Code Section 32–28–3–14 does not apply. *See Complete,* 530 N.E.2d at 1221; *see also Nelson v. Marchand,* 691 N.E.2d 1264, 1272 (Ind.Ct.App.1998).

■ It is logical that a contractor whose breaches of contract have resulted in damages that exceed the remaining balance due under the contract should not be allowed to recover attorney fees under the mechanic's lien statute. Here, unlike in *Clark's Pork, Complete,* or *Nelson,* the property owner, Farah, filed the initial breach of contract suit against the contractor, Architura, and Architura filed a mechanic's lien counterclaim, and not vice versa. That is a distinction without a difference. The end result is the same: a net judgment in favor of the property owner. In such a situation, Architura is not entitled to attorney fees under the mechanic's lien statute. Architura does not argue that an alternative basis for awarding such fees exists. We reverse the award of $15,000 in attorney fees to Architura on its mechanic's lien claim. We remand for the trial court to award a total of $7500 to Architura on its mechanic's lien claim and to recalculate the amount of prejudgment interest to which it is entitled, based on that amount.

## II. Failure to Inspect

■ Next, we address Farah's claim that it is entitled to damages for Architura's failure to adequately inspect Capitol's work on the renovation project. The trial court did not specifically mention this claim in any of its sua sponte findings accompanying its judgment. That is not fatal to our review of the case, especially given that the findings were made sua sponte. We may affirm a general judgment with findings on any basis supported by the evidence. *Mitchell,* 788 N.E.2d at 435. The trial court did state generally, after identifying matters in which it believed Architura breached its contract with Farah, that "[a]ll other construction issues identified by the Plaintiff would not be the responsibility of the architect, but would be the responsibility of the contractor." App. p. 25. We read this as an implicit rejection of Farah's claim that it was entitled to damages for Architura's alleged failure to adequately inspect the premises.

■ On this issue, Farah is not very clear regarding when or how Architura

failed to inspect the premises. However, both the opening and reply briefs seem to focus primarily upon the bank's release of the final $38,000 to Capitol sometime around or after April 2004. This release of funds occurred after Architura wrote a letter indicating that Capitol, subject to some exceptions, had completed all of the items on the punch list that had been created after the certificate of substantial completion had been issued in November 2003. It does appear that Architura wrote a letter regarding completion of the punch list on April 7, 2004, without having first inspected the premises. Because of a banker's knowledge of that fact, however, funds were not released to Capitol on .the basis of that letter. Instead, Architura wrote a second letter regarding the punch list on April 21, 2004. And, with respect to that letter, there is clear testimony from Conly that he did in fact inspect the premises before writing the letter. Thus, there is evidence in the record supporting the conclusion that Architura complied with its contractual obligation to inspect the premises before the final release of money to Capitol occurred.

Moreover,. Farah's banker testified that the bank hired its own inspector to view the premises with respect to the punch list items, and it only released the final funds to Capitol after that inspection had occurred. Thus, to the extent Farah is contending that Architura breached its contract by failing to adequately inspect the premises, resulting in numerous construction deficiencies or incompletions going unnoticed, the evidence most favorable to the judgment is that any such breach did not result in damage to Farah. That is because the bank did not release the final funds based solely upon Architura's in-

spection, but also (or possibly even exclusively) upon its own inspection. To recover for breach of contract, a plaintiff must prove the existence of a contract, breach, and that the plaintiff suffered damage as a result of the breach. *Collins v. McKinney*, 871 N.E.2d 363, 370 (Ind.Ct.App. 2007).[1] The final element of a breach of contract claim is lacking here.

Farah also seems to imply that Architura's inspections throughout the course of the project were inadequate. It states in its reply brief that the inspections Architura conducted were "fundamentally faulty." Reply Br. p. 7. It cites no evidence in the record to support this contention, aside from the general observation that there were certain construction deficiencies or incompletions that allegedly escaped Architura's notice.

■■■ In a contract for work or services, there is a duty to perform the work skillfully, carefully, diligently, and in a workmanlike manner; failure to carry out that duty may constitute either a breach of contract or negligence. *INS Investigations Bureau, Inc. v. Lee*, 784 N.E.2d 566, 577–78 (Ind.Ct.App.2003), *trans. denied.* Regardless, Farah does not dispute that its contract with Architura incorporated a standard form contract for construction projects drafted by the American Institute of Architects. That document states in part:

> 4.2.2 The Architect, as a representative of the Owner, will visit the site at intervals appropriate to the stage of the Contractor's operations.... However, the Architect will not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the work....

---

1. There are some instances when relief other than monetary damages may be available for a breach of contract. *See Collins*, 871 N.E.2d at 370. Farah, however, only is seeking monetary damages.

4.2.3 The Architect will not be responsible for the Contractor's failure to perform the Work in accordance with the requirements of the Contract Documents. The Architect will not have control over or charge of and will not be responsible for acts or omissions of the Contractor, Subcontractors, or their agents or employees, or any other persons or entities performing portions of the Work.

Ex. 22.

In addressing this standard form contract in a negligence action against an architect for allegedly failing to adequately inspect and supervise a construction project,[2] this court has held that this language clearly indicates that an architect is not required to be an insurer of a contractor's work. *Mayberry Cafe, Inc. v. Glenmark Constr. Co., Inc.*, 879 N.E.2d 1162, 1174 (Ind.Ct.App.2008), *trans. denied.* Furthermore, "[a]bsent a special agreement, an architect does not imply or guarantee a perfect plan." *Id.* at 1173. There is no such special agreement here. In the absence of such an agreement, we do not believe any alleged failure to notice construction deficiencies or incompletions required the trial court to find, as a matter of law, that Architura breached the contract with respect to its inspection obligations. To hold otherwise would essentially transform Architura into an insurer of Capitol's work, which the contract between Farah and Architura prohibits. The trial court did not err in not awarding any damages to Farah for Architura's alleged failure to conduct adequate inspections.

### III. Amount of Damages

 Finally, Farah alleges that the trial court erred in its calculation of damages Architura owes for the breaches of contract the trial court found had occurred. When reviewing the adequacy of a damages award in a breach of contract action, we do not reweigh evidence or judge witness credibility, and will consider only the evidence favorable to the award. *Coffman v. Olson & Co., P.C.*, 906 N.E.2d 201, 210 (Ind.Ct.App.2009), *trans. denied.* The award cannot be based on speculation, conjecture, or surmise, and must be supported by probative evidence. *Id.* A party's recovery for breach of contract is limited to the loss actually suffered, and the party may not be placed in a better position than he or she would have enjoyed if the breach had not occurred. *Id.* "Accordingly, a damage award must reference some fairly defined standard, such as cost of repair, market value, established experience, rental value, loss of use, loss of profits, or direct inference from known circumstances." *Id.* We will reverse a damages award only if it is not within the scope of the evidence of record. *Id.* at 210–11.

We reiterate that the trial court found Architura breached its contract with Farah in the following ways: failing to design adequate access to outdoor signage and the roof, faulty interior lighting design, faulty exterior wall insulation design, and faulty design of the roof. At trial, Farah's expert witness gave the following cost estimates for these items: $33,717.50 to repair the roof; $13,610 to fix the exterior insula-

---

**2.** It is not clear that a plaintiff may now, any longer, be able to state a negligence claim against an architect with respect to problems that arise during a construction project, as opposed to purely contractual claims, where the plaintiff has suffered only economic loss. *See Indianapolis–Marion County Pub. Library v. Charlier Clark & Linard, PC.*, 929 N.E.2d

722, 738 (Ind.2010). Farah states its claim against Architura as breach of contract, not negligence. In any case, *Mayberry Cafe's* interpretation of identical contract provisions, defining the scope of an architect's duties and what may constitute a breach of those duties, is relevant here.

tion; $6200 to provide adequate access to the roof and outdoor signage; $120,839.50 to fix the lighting; $6500 to prepare construction plans etc.; and $22,214.55 generally for things such as delivery trucks and dumpsters to carry out the repairs. Farah also contends that it should be entitled to an additional $3000 for the installation of the concrete steps in the front of the building; the trial court did not expressly find this cost to be a result of a breach of contract by Architura, but did state that the failure to include the steps in the original plan resulted in a higher cost to Farah than if they had been included. The total of all of these items is $206,081.55.[3]

The trial court awarded Farah $64,310 in damages for Architura's breach of contract; the order contains no detailed explanation as to how the trial court reached this amount or break down the amount of damages attributable to each separate breach of contract. Again, as the findings here were entered sua sponte, this is not necessarily fatal to the trial court's judgment.

 Turning first to the roof repair, the trial court expressly found that the roof leakage was the result of both construction defects for which Capitol was solely responsible, and design defects for which Architura was solely responsible. Architura had successfully moved before trial to assert a non-party defense with respect to Capitol.[4] As for the $33,717.50 Farah sought for repair of the roof, it is reasonable and within the scope of the

evidence before the trial court to award considerably less than that amount as damages caused by Architura, as opposed to Capitol.

The same reasoning applies to construction costs sought by Farah with respect to creating repair plans and general construction costs and supplies. The cost estimates supplied by Farah's expert reflected a number of repair items that the trial court ultimately found were the responsibility of Capitol, not Architura. Thus, it is reasonable and within the scope of the evidence not to assess the full $6500 and $22,214.55 general planning and construction costs against Architura.

Regarding the insulation for the exterior walls, the trial court specifically found: "The insulation is lacking at the bottom of the exterior walls such that heat escapes excessively and bug infiltration is possible. The inadequate wall design is a breach of Defendant's contractual duty to Plaintiff." App. p. 23. The $13,610 cost estimate with respect to insulation provided by Farah's expert was broken down into two components: $7820 to repair insulation at the *bottom* of all exterior walls, and $5790 for insulation on the exterior walls. However, as quoted above, the trial court only expressly found there to be a breach of contract regarding insulation at the bottom of the exterior walls. Thus, it would have been reasonable for the trial court not to award the full $13,610 that Farah was seeking for insulation costs.

**3.** In its opening brief, Farah requests a total damages award of $206,081.55. In its reply brief, Farah uses a figure of $132,590.50. Farah does not explain why, nor can we discern how or why, it requests a lower amount in its reply brief.

**4.** Neither party discusses whether the Comparative Fault Act applies here. Even if it did, that Act does not require a trial court acting as fact-finder to specifically state the

percentage of fault attributable to each party. *Zambrana v. Armenta*, 819 N.E.2d 881, 889 (Ind.Ct.App.2004), *trans. denied*. It also appears that, technically, Capitol is not a nonparty in this case. Again, neither party argues whether it is appropriate to assert a nonparty defense with respect to a party to the litigation, though not a participant in a trial between two different parties.

Turning to access to the roof and outdoor signage, which Farah's expert testified would cost $6200 to correct, the trial court found:

> The access ladder for the roof was a necessity which was not included in the design but should have been. This is also true for the access to the outdoor signage. Proper access should have been designed by Mr. Conley [sic] but was not and to install it at this time will be an extra cost.

*Id.* at 25. Elsewhere, however, the trial court stated only that Architura's failure to design access to the outdoor signage was a breach of contract that resulted in a cost to correct "in excess of the contract price." *Id.* at 22. It is reasonable to conclude that the trial court may have found only the cost associated with access to the outdoor signage, and not the roof, to be attributable to breach of contract by Architura; alternatively, the trial court may have determined that only some of the $6200 cost associated with these items exceeded what it would have cost to include them in the original plans.

Finally, we address the issue of inadequate lighting, which is by far the issue on which the parties most greatly differ in terms of damages. Farah's expert testified that the lighting design was inadequate and that it would cost $120,839.50 to rectify by replacing the lighting throughout the store; $12,104.50 of that cost was associated with reconfiguring the ceiling for the new lighting, while $108,735 was for the actual electrical and lighting work. Conly did concede at trial that his lighting design turned out to be inadequate for Farah's purposes. However, he strongly disagreed with Farah's expert that the entire lighting system in the store had to be replaced, saying it was "completely unnecessary" to do so. Tr. p. 785. Rather, Conly believed the problems with the lighting could be corrected for between $10,000 and $20,000.

Conly is an experienced architect who has worked on numerous and sometimes high-profile construction projects, and his testimony estimating the cost of the lighting "fix" was allowed over objection; on appeal, Farah does not challenge the overruling of that objection. Although the trial court in its order noted that Conly's testimony lacked specifics as to how the lighting would be fixed, it did not indicate that it was discrediting his testimony as to the cost of that fix. Rather, it went on to state that Farah's lighting cost estimate would have provided a lighting system "far in excess of what the Plaintiff could have reasonably expected." App. p. 24. The record reasonably supports that finding. There was evidence that Conly and the Ahdoots had discussions before construction regarding lighting choices and that the Ahdoots themselves were responsible for some of the poor lighting issues and that cost considerations were relevant as to what type of lighting was included in the original plans. Architura should not be required to replace the entire lighting system with a system that Farah originally was not able to afford, where a considerably less expensive option is available. A party may not be placed in a better position than he or she would have enjoyed if a breach of contract had not occurred. *Coffman*, 906 N.E.2d at 210. There is evidence in the record that replacing the entire lighting system at Architura's expense would do precisely that.

After reviewing the record and the trial court's findings in detail, we conclude that a damages award of $64,310 falls within the scope of the evidence. The trial court was not required to accept Farah's cost of $120,839.50 to correct the store lighting, as opposed to Conly's much lower figure of $10,000 to $20,000. As for many of the

other items of damages, there were reasons in the record not to award the full amount that Farah was seeking, including Capitol's responsibility for some of the costs. We cannot arrive at a larger damages figure without reweighing the evidence and judging witness credibility, which we cannot do. We affirm the amount of damages the trial court awarded Farah for Architura's breaches of contract.

### Conclusion

We reverse the trial court's award of $26,166 in principal and $15,000 in attorney fees on Architura's mechanic's lien claim. The principal mechanic's lien amount must be reduced to $7500, and we remand for the trial court to recalculate the amount of prejudgment interest to which Architura is entitled. We affirm the trial court's decision not to award damages on Farah's claim that Architura failed to adequately inspect the premises and affirm the amount of damages it awarded Farah for Architura's breaches of contract.

Affirmed in part, reversed in part, and remanded.

RILEY, J., and DARDEN, J., concur.