788 N.E.2d 433 (2003)
In the Matter of the TRUST CREATED UNDER the LAST WILL AND TESTAMENT OF John E. MITCHELL, Deceased.
PNC Bank, Appellant-Respondent,
v.
Robert Snoddy and Mark Snoddy, Appellees-Petitioners.
No. 22A05-0208-CV-361.
Court of Appeals of Indiana.
March 14, 2003.
Publication Ordered April 29, 2003.
*434 Michael F. Ward, Ward Tyler & Scott, New Albany, IN, Attorney for Appellant.
Eric A. Manterfield, Rodney S. Retzner, Kreig DeVault LLP, Indianapolis, IN, Attorneys for Appellees.

OPINION
BARNES, Judge.

Case Summary
PNC Bank, as trustee of the John E. Mitchell Trust ("the Trust"), appeals the trial court's denial of reimbursement from the Trust for attorney fees incurred in defending an action brought by brothers Robert and Mark Snoddy, the Trust's beneficiaries, to prematurely terminate the Trust or to remove PNC as trustee. We affirm.

Issue
The sole restated issue before us is whether the trial court lacked discretion to prevent PNC from recouping its attorney fees from the Trust when PNC successfully defended against the Snoddys' action to terminate the Trust or remove PNC as trustee.

Facts
The evidence most favorable to the trial court's decision reveals that the Trust was established in 1974 following Mitchell's death, pursuant to the terms of his last will and testament. The terms of the Trust provided that it would pay income to Mitchell's widow until her death. Thereafter, the Trust was to remain in existence until both Robert and Mark Snoddy, Mitchell's great-nephews, reached fifty years of age, at which time the Trust was to terminate and the Snoddys were to receive the remainder of the Trust assets. The original corpus of the Trust was approximately $419,000.
Mitchell's widow died in November 2000. Brenda Tucker, a PNC vice president and the administrator assigned to the Trust, began communications with the Snoddys that apparently misled them into believing PNC was willing to terminate the Trust prematurely, even though Mark, the youngest brother, would not turn fifty until September 2003. Tucker also led the Snoddys to believe, alternatively, that PNC would step down as trustee if it did not prematurely terminate the Trust. Ultimately, PNC was neither willing to prematurely terminate the Trust nor to remove itself as trustee. In addition to these misunderstandings, the Snoddys also *435 were dissatisfied generally with PNC's performance as trustee because of poor customer service, particularly with respect to the failure of Tucker and others to timely respond to inquiries regarding the Trust.
On December 21, 2001, the Snoddys filed a petition to terminate the Trust, which then had a value of approximately $2.8 million. On January 18, 2002, the Snoddys filed a petition to remove and replace PNC as trustee in the event the trial court decided not to terminate the Trust. On February 22, 2002, the Snoddys filed a petition requesting that the trial court forbid PNC from recovering from the Trust its attorney fees in defending against the Snoddys' petitions. The trial court conducted a hearing on April 5, 2002, at which Robert Snoddy and Tucker testified. On May 24, 2002, the trial court entered its order denying termination of the Trust and the removal of PNC as trustee. It did, however, direct PNC to replace Tucker as administrator of the Trust. Additionally, it concluded that "[u]nder the facts and circumstances of this case," PNC could not recover its attorney fees in this matter from the Trust. App. p. 7. The trial court denied PNC's motion to correct error on July 12, 2002, and PNC now appeals.

Analysis
The first issue we must address is PNC's contention that the trial court's findings regarding the attorney fees issue are inadequate to support its ruling. PNC also contends we are limited in our review of the attorney fees issue to determining whether the trial court's findings on the termination and removal issues support its decision to prevent PNC from recouping its attorney fees from the Trust. Specifically, PNC contends that we must adhere to the familiar two-tiered standard of review for judgments accompanied by Indiana Trial Rule 52 findings and conclusions: whether the evidence supports the findings, and whether the findings support the judgment. See Learman v. Auto Owners Ins. Co., 769 N.E.2d 1171, 1174 (Ind. Ct.App.2002), trans. denied. Sua sponte findings control only as to the issues they cover, and a general judgment standard of review will control as to the issues upon which there are no findings. Id. A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence. Id. In making that determination, we will neither reweigh the evidence nor judge the credibility of the witnesses. Sizemore v. H & R Farms, Inc., 638 N.E.2d 455, 457 (Ind.Ct. App.1994), trans. denied.
Here, in support of its decision not to terminate the Trust, the trial court found that "[a]lthough the purpose of the trust has been fulfilled, the terms of the trust are clear and unambiguous in that the trust is not to terminate until such time as both Robert Snoddy and Mark Snoddy attain fifty (50) years of age." App. pp. 5-6. The trial court supported its decision not to remove PNC as trustee because although it found there was "a bad relationship or no relationship between [the Snoddys] and [Tucker] ...", "[f]rom an investment and performance standpoint, the Trustee appears to have performed well." App. p. 6. To the extent the trial court made some findings on these two issues, it did so sua sponte and did not make extensive findings and conclusions. As for that paragraph of the trial court's order discussing the attorney fees issue, it simply noted that PNC would not be allowed to recover its fees from the Trust "under the facts and circumstances of this case." App. p. 7. We conclude that because the trial court only entered partial findings sua sponte, and entered no detailed findings with respect to the attorney *436 fees issue, we will review the trial court's decision on that issue as a general judgment and analyze whether it can be affirmed under any legal theory supported by the evidence.
The parties do not agree as to the correct standard to apply when considering whether a trustee may collect attorney fees from the trust in a situation where the trustee successfully defends against an action or actions brought by a beneficiary. The Snoddys argue that the attorney fees issue is controlled by Indiana Code Section 34-52-1-1(b), which allows a prevailing party to recover attorney fees from the losing party if the losing party's claim or defense was frivolous, unreasonable, or groundless, or if that party litigated in bad faith. Because allowing PNC to recover its attorney fees from the Trust would be tantamount to charging the Snoddys with those fees, the Snoddys argue, PNC was required to demonstrate, but failed to do so, that the Snoddys' claims were frivolous, unreasonable, or groundless, or that they litigated in bad faith.
PNC, on the other hand, argues that the trial court's discretion not to allow PNC to recover its attorney fees from the Trust was severely limited by a number of different statutes. First, it notes that Indiana Code Section 30-4-3-3 allows a trustee to defend actions "for the protection of trust property and of himself in the performance of his duties" and to employ attorneys for that purpose. Additionally, Indiana Code Section 30-4-5-16 provides that a trustee "is entitled to reasonable compensation from the trust estate for acting as trustee" unless there has been a breach of trust or the terms of the trust provide otherwise. Finally, Indiana Code Section 28-1-11-13 permits any bank or trust company to "demand and receive" reasonable compensation for duties it performs, together with advances that "may include the compensation paid for the employment of legal services when necessary for the protection of any trust or other fiduciary relation."[1] PNC argues that reading these statutes together indicates that "unless a trustee is guilty of a breach of trust, has failed to faithfully perform and discharge its duties..., or is ... subject to removal `for cause,' then it is entitled to reasonable compensation for its services out of the trust estate." Appellant's Br. p. 14.
Neither party's suggested analysis perfectly squares with the limited case law authority on this issue. First, we observe that Indiana Code Section 30-4-5-11 is the provision of the Trust Code that explicitly permits attorney fees to be charged against either trust income or principal, depending on the circumstances. This court has held that a trial court finding a trustee acted "reasonably" in defending an action brought by a beneficiary, that legal expenses were "reasonably incurred" by a trust, and that attorney fees were "properly incurred as an expense of administration" of a trust are "sufficient" findings to permit the attorney fees to be assessed as an administrative expense against the trust under Section 30-4-5-11. Matter of Fitton, 605 N.E.2d 1164, 1174 (Ind.Ct.App. 1992). We did not say, however, whether such findings are necessary, or that such findings required an allowance for attorney fees. Nevertheless, the opinion indicates the discretionary nature of a trial *437 court's decision whether to allow a trustee to recover attorney fees from the trust if he successfully defends an action brought by a beneficiary.[2]
Our supreme court has also explicitly held that the award or denial of the reimbursement of attorney fees from a trust to a trustee is "`in the exercise of a sound discretion, and in the absence of an affirmative showing of error or abuse of discretion we must affirm [the trial court's] order.'" Malachowski v. Bank One, 682 N.E.2d 530, 533 (Ind.1997) (quoting Zaring v. Zaring, 219 Ind. 514, 523, 39 N.E.2d 734, 737 (1942)). Additionally, "`[t]he right to compensation at the cost of the estate should not depend upon the result of the litigation but rather upon the reasonable necessity for such litigation.'" Id. (quoting Zaring, 219 Ind. at 523, 39 N.E.2d at 737). A trustee may be precluded from recovering attorney fees from the trust if the litigation arose because of the misconduct and/or negligence of the trustee. Id. (quoting Haas v. Wishmier's Estate, 99 Ind.App. 31, 35-36, 190 N.E. 548, 549 (1934)). The Malachowski court affirmed the trial court's denial of the trustee's recovery of its attorney fees where the trustee successfully defended against several fraud counts brought by the beneficiaries, but the trial court had nevertheless ordered the trustee's removal because it had "committed significant and substantial misconduct." Id. at 534.
It is highly informative that the Malachowski court did not mention any statute as limiting the trial court's discretion to deny the trustee's recovery of its attorney fees, as PNC would have us hold, while at the same time acknowledging that the trial court had no discretion to deny the beneficiaries from recovering their attorney fees in their successful attempt to remove the trustee because of a specific governing Trust Code statute, Indiana Code Section 30-4-3-22(e). We are not inclined to find a statutory limitation on a trial court's discretion to deny recovery of attorney fees to a trustee that our supreme court did not find. Instead, our supreme court noted the following factors to consider when determining whether an award of attorney fees to a trustee from a trust is appropriate: whether the trustee acted reasonably and in good faith; whether the litigated issue is of little or momentous consequence to the estate or its beneficiaries; whether the facts are undisputed or are so controversial as to require an adversary proceeding for their determination; whether the legal questions are simple or complex, settled by precedent, or open to serious debate; and any other matters bearing upon the reasonableness or the necessity for the litigation and the employment of attorneys. Malachowski, 682 N.E.2d at 533 n. 3 (quoting Zaring, 219 Ind. at 523, 39 N.E.2d at 737).[3]
We acknowledge the existence of authorities stating that as a general rule, "[a] trustee is entitled to attorney's fees on a successful attempt to defend against an action to remove him, with the fees payable out of the trust." Henry's Probate *438 Law & Practice, Vol. 3A p. 100 (citing Saulsbury v. Denton Nat. Bank, 25 Md. App. 669, 335 A.2d 199 (1975); Jennings v. Murdock, 220 Kan. 182, 553 P.2d 846 (1976)). Such a broad statement, however, is incompatible with the notion that a trial court has discretion in awarding attorney fees and, specifically, with the Malachowski/Zaring holding that a decision whether to award attorney fees to a trustee out of the trust should not depend on the result of the litigation, but primarily on the reasonable necessity for the litigation. Although it may be the relatively rare case that a trustee would completely prevail in an action brought against it by the beneficiaries, yet still be denied recovery of its attorney fees, such a result is not without precedent. See In re Estricher's Estate, 202 Misc. 431, 111 N.Y.S.2d 295 (1952) (holding trustee was not entitled to reimbursement of attorney fees incurred in successfully defending beneficiary's action to remove it as trustee where trial court found "the corporate trustee was remiss in the performance of certain of its trust duties and the court does not condone its acts"), aff'd, 281 A.D. 828, 118 N.Y.S.2d 922 (1953). We also observe that the Malachowski opinion did not allow the trustee to recover any attorney fees from the trust in spite of its successful defense of several claims brought by the beneficiaries; therefore, a successful defense against a beneficiary's claim is no guarantee of the recovery of the attorney fees incurred in defending that claim.
In determining whether a trial court has abused its discretion, we consider whether the judgment is clearly against the logic and effect of the facts and inferences supporting the judgment. Breneman v. Slusher, 768 N.E.2d 451, 461 (Ind. Ct.App.2002), trans. denied. In conducting our review, we will neither reweigh the evidence nor substitute our judgment for that of the trial court. Id. In its order denying PNC's motion to correct error, the trial court stated that PNC "had acted badly, just not to the level that the Court would exercise its discretion to remove PNC as Trustee ...." and that PNC "was responsible, to a certain degree, for this litigation." App. p. 9. There is some evidence in the record to support these statements. Specifically, Robert Snoddy testified that he and his brother initially had been led to believe that PNC was willing to terminate the Trust prematurely. That position was reversed during a subsequent meeting between the Snoddys and Brenda Tucker, at which time the Snoddys were led to believe that PNC was, in the alternative, willing to step down as trustee without objection in favor of another bank. PNC's Trust Committee did not approve this move, however, to the Snoddys' surprise and dismay. Tucker and the PNC investment officer for the Trust regularly failed to return phone calls regarding the Trust from the Snoddys and their attorney. At one point, Tucker phoned the Snoddys' aunt seeking information related to the Trust, but also asked irrelevant questions about the Snoddys' background and made disparaging comments about Mark Snoddy.
It may be a very close question whether PNC truly "acted badly" enough to warrant precluding it from recovering its attorney fees from the Trust, as the trial court stated, or whether it simply was doing its best to deal with trust beneficiaries who were overly-eager to destroy the trust and prematurely access a substantial windfall inheritance. It does appear that the Snoddys may have acted unpleasantly toward Tucker, were disliked and viewed with suspicion by John Mitchell's widow, and were at least partially to blame for the hostile relationship and lack of communication between them and PNC. Tucker, in particular, also denies having misled the *439 Snoddys as to PNC's intentions regarding the Trust. This, however, was a question for the trial court to answer, after examining the evidence and particularly after listening in-court to the competing testimony of Robert Snoddy and Brenda Tucker; we will neither reweigh evidence nor judge witness credibility. There is some indication in the record that PNC's representatives substantially misled the Snoddys as to their intentions regarding the Trust on at least two occasions, and that the failure of PNC's representatives to maintain communication with the Snoddys was a source of great irritation to them, thus supporting the conclusion that PNC was not without blame in fostering a hostile relationship with the Trust beneficiaries that led to the current litigation, especially with respect to the Snoddys' removal request. Resolution of that issue was of momentous consequence to the Trust, required the weighing of competing evidence in an adversarial proceeding, presented a legal question open to serious debate, and litigation of the issue was at least partially necessitated by PNC's actions. Under Malachowski and Zaring, this was sufficient to deny PNC recovery of its attorney fees. We cannot say the trial court's decision to deny PNC the opportunity to recover its attorney fees from the Trust clearly went against the logic and effect of the facts and circumstances before it, and, therefore, the trial court did not abuse its discretion in making that decision.

Conclusion
We have reviewed the trial court's decision to deny PNC recovery of its attorney fees for an abuse of discretion and not as a judgment supported by special findings. Having done so, we conclude the trial court did not abuse its discretion in refusing to allow PNC to recover its attorney fees from the Trust even though PNC prevailed on the petitions brought by the Snoddys, where there was evidence presented that this litigation was at least partially prompted by PNC's actions. We affirm.
Affirmed.
BAILEY and ROBB, JJ., concur.

ORDER
The Court having heretofore handed down its opinion in this appeal on March 14, 2003, marked Memorandum Decision, not for publication;
Come now the Appellees, by counsel, and file herein their Motion for Publication of Decision, alleging therein that the Appellees believe that the decision both establishes a rule of law and involves a legal issue of unique importance and therefore pray this Court to publish its Memorandum Decision.
The Court having examined said Verified Motion, having reviewed its opinion in this case and being duly advised, now finds that the Appellees' Verified Motion for Publication of Decision should be granted.
IT IS THEREFORE ORDERED that the Appellees' Verified Motion for Publication of Decision is granted and this Court's opinion heretofore handed down in this cause on March 14, 2003, marked Memorandum Decision, Not for Publication, is now ordered published.
NOTES
[1] PNC also directs us to Indiana Code Section 29-1-10-13, which provides that "an attorney performing services for the estate at the instance of the personal representative shall have such compensation therefor out of the estate as the court shall deem just and reasonable." That section falls under the Probate Code. We are concerned here with the Trust Code, Title 30 of the Indiana Code, which has its own provisions regarding the payment of attorney fees.
[2] The key holding of Fitton was that a trial court could not assess the attorney fees against one particular beneficiary's share of the trust unless the trustee demonstrated under prior Indiana Code Section 34-1-32-1(b) (now XX-XX-X-X(b)) that the beneficiary's action was frivolous, unreasonable, groundless, or litigated in bad faith. 605 N.E.2d at 1173-74.
[3] Zaring actually considered whether one co-trustee could be awarded attorney fees from the trust where he initiated unsuccessful litigation against the other co-trustees, but the Malachowski court clearly found Zaring applicable to the situation before it and the one before us today, namely, where a trustee seeks to recover attorney fees for defending an action brought the beneficiaries.