In re The Matter of the Trust Created Under the Last Will and Testament of Wilfred L. MONTGOMERY

Brian Haehl, Appellant,

v.

David Montgomery and Phyliss Crumbo, Appellees.

No. 22A01–1007–TR–319.

Court of Appeals of Indiana.

Aug. 9, 2011.

C. Gregory Fifer, Applegate Fifer Pulliam LLC, Jeffersonville, IN, Attorney for Appellant.

Steven K. Palmquist, William E. Smith, Crystal G. Rowe, Kightlinger & Gray, LLP, New Albany, IN, Attorneys for Appellees.

## OPINION

BROWN, Judge.

Brian Haehl appeals the trial court's Order Approving Trustees Amended Final Accounting, Awarding Judgment for Attorney Fees and Costs in Favor of Trust Beneficiary and Successor Trustee and Denying Award of Additional Trustee Fees, Expenses, Costs and Attorney Fees to Former Trustee and His Attorney (the

"2010 Order") in favor of David Montgomery, as trust beneficiary, and Phyllis Crumbo [1] as successor trustee (collectively, the "Appellees"). Haehl raises four issues, which we consolidate and restate as:

I. Whether the court abused its discretion when it removed Haehl as trustee and, upon modifying the trust, appointed Crumbo as successor trustee; and

II. Whether the court abused its discretion when it awarded attorney fees in favor of the Appellees and denied Haehl's request for additional compensation and attorney fees.

Additionally, the Appellees request appellate attorney fees pursuant to Ind.Code § 30–4–3–22(e). We affirm in part, reverse in part, and remand.

The relevant facts follow. On December 11, 2000, Wilfred Montgomery executed his last will and testament which devised his residence to David, his grandson, and left his residuary estate to Haehl as trustee for David, thus creating a testamentary trust with David as the sole vested beneficiary.[2] The trust provisions provided that the trust would come into existence if Wilfred died before David reached the age of thirty-five years old, and the principal balance and any undistributed income would be distributed to David upon attaining that age. The trust provisions also instructed that David would be paid $1,000 per month adjusted for inflation and would be able to invade the trust principal "from time to time as the Trustee in his sole discretion deems necessary." Appellant's

---

1. Crumbo is David's mother. Transcript at 7.

2. The will also directed that if David predeceases Wilfred "leaving no lineal descendants," then the "residuary estate shall be distributed to [Crumbo]." Appellant's Appendix at 18. Similarly, if during the trust's

lifespan David were to die, "the balance remaining in the trust shall be distributed to DAVID'S lineal descendants, subject to the trust provisions.... If DAVID has no lineal descendants surviving [Wilfred], then the balance of the trust shall be distributed outright to [Crumbo]." *Id.* at 19.

Appendix at 18. Additionally, the will provided in part regarding the trust:

## ITEM FIVE
### *TRUSTEE'S DUTIES, POWERS, AND RESPONSIBILITIES*

\* \* \* \* \* \*

F. To the extent that any such requirements can be legally waived, no Trustee shall ever be required to give any bond as Trustee, to qualify before, or be appointed by any Court, or to obtain the order or approval of any Court in the exercise of any power of discretion hereunder, although it may be done at the Trustee's discretion. The Trustee is relieved from any requirement as to routine Court accountings that may now or hereafter be required by the statutes in force in any jurisdiction, although the Trustee is not precluded from obtaining judicial approval of its accountings.

\* \* \* \* \* \*

H. Any Corporate Trustee shall be entitled to reasonable compensation for services rendered in administering and distributing the Trust property in accordance with its established schedule of fees in effect from time to time during the period of its administration of this Trust and to reimbursement for expenses.

Any individual Trustee shall be entitled to reasonable compensation for services rendered in administering and distributing the Trust property in accordance with an hourly rate for the services rendered and to reimbursement for expenses.

\* \* \* \* \* \*

L. The Trustee may be removed upon written request of the majority of the current income beneficiaries, provided that the majority of the current income beneficiaries can agree upon a successor Trustee, and the successor Trustee acknowledges written acceptance of its appointment to the existing Trustee and their willingness to serve. The successor Trustee must be a financial institution or other form of corporate trustee . . . .

*Id.* at 21–23.

On July 30, 2001, Wilfred died; David, who was born on October 23, 1975, was twenty-five years old at that time. The will was admitted to probate, and the trust was formed with Haehl as trustee.

On September 5, 2007, David by counsel sent Haehl a letter requesting that Haehl resign as trustee. In the letter, David cited Item 5(L) of the will which "gives [David] the authority to remove [Haehl] as Trustee," and indicated that "[w]e are in the process of arranging for the trust to be docketed in the Circuit Court . . . so that a Successor Trustee may be properly named." Exhibits at 4. The letter noted that David would not ask that Haehl "pay any part of the cost of transferring" the trust to a successor trustee or require Haehl to attend the hearing if he agreed to cooperate. *Id.* On September 21, 2007, David filed a petition to docket the trust with the court in the Floyd County Circuit Court requesting that the court remove Haehl and appoint Crumbo as successor trustee which the court granted on September 24, 2007. On October 18, 2007, Haehl filed a response to David's petition arguing against removal and the appointment of "Crumbo or any other individual" as successor trustee. Appellant's Appendix at 29.

On November 2, 2007, the court held a hearing on David's petition. At the hearing, David indicated that, pursuant to Ind. Code § 30–4–3–24.4, he was requesting that the court modify the trust and allow an individual (specifically, Crumbo) to serve as trustee because the "current arrangements are impractical and wasteful"

and because "the purposes of the trust," which he indicated were his youth and "lack of financial knowledge," had been fulfilled. Transcript at 7–8. David's counsel noted for the court that Ind.Code § 30-4-3-29 "provides powers for beneficiaries to remove trustees and that in this case mirrors this trust. There is no provision of cause or anything like that, we're not interested in getting into those reasons, it's an automatic right the beneficiary has...."[3] *Id.* at 14–15. David's counsel also admitted the September 5, 2007 letter and marked it as Petitioner's Exhibit A.

Also, at the hearing David testified that Haehl charged one percent of the fair market value of the assets per year, and that Haehl also employs an investment company which the trust pays 2.15 percent per year. David testified that Crumbo would not charge for her service and that Brian Cote, an investment advisor whom Crumbo as trustee would employ, would charge one percent; thus, David indicated that the total yearly fees the trust would pay would decrease from 3.15 percent to 1 percent. David testified that Haehl was "[h]ard to get a hold of." *Id.* at 13. David also testified that, were the court not to modify the trust with respect to who may serve as the trustee, he had agreed with Cumberland Trust and Investment, a financial institution, to serve as successor trustee. When asked whether David was satisfied with Haehl's performance as trustee, David replied: "No, I'm not." *Id.* at 23. Haehl, who was appearing *pro se* at the hearing, gave a statement in which he highlighted that the trust "says that I am to be trustee until David decides a corporate trustee can be selected," and that he did not think it was proper for Crumbo to serve as trustee because she was named as

a contingent beneficiary on the trust. *Id.* at 25.

On November 7, 2007, the court made the following entry in the chronological case summary ("CCS"):

1. Court reviews item five (5) L. of the trust created under the last will and testament of Wilford [sic] L. Montgomery. The Court determines that the Petitioner, David Montgomery, has sole authority and discretion to remove the Trustee, Mr. Brian Haehl and Petitioner has exercised such authority by virtue of Petitioner's Exhibit "A" and the petition filed herein. 2. Court finds and determines that Mr. Haehl has been properly removed as Trustee. Based on the evidence and I.C. 30-4-3-24.4 the Court modifies the provisions of item five (5) section (L) of the Trust to provide that the successor trustee may be an individual rather than a financial institution or other form of corporate trustee. This finding is based on the present size of the corpus of the Trust, the fact that the Trust terminates in less than four (4) years and the proposed individual trustee will engage the services of a professional financial planner and her current husband is a retired attorney. 3. The appointment of Phyllis Crumbo by the Petitioner as the designated Successor Trustee is confirmed by the court provided that she files her acceptance of appointment and willingness to serve with the Court not later than November 30, 2007. 4. Mr. Haehl shall transfer the assets of the trust as designated by the Successor Trustee within sixty (60) days of 11/07/07 and submit his final accounting to the Petitioner not later than ninety (90) days from 11/07/07. Mr. Haehl is

---

**3.** At one point in the hearing, David's counsel noted: "My reading of the trust was that ... the beneficiary has total discretion and I don't see either in the trust or in the statute that he

has to raise cause or other reasons. We have reasons, but I don't think that's relevant." Transcript at 21.

entitled to fees of 2/3 of 1/2 of 1% of of [sic] the fair market value of the invested assets of the Trust as of the date of transfer . . . .

Appellant's Appendix at 2. On November 13, 2007, Crumbo filed her trustee's acceptance of appointment and oath, and on November 14, 2007 the court issued an order (the "2007 Order") reiterating the contents of the November 7, 2007 CCS entry [4] and officially appointing Crumbo as successor trustee.

On February 4, 2008, Haehl filed a Final Accounting; however, on February 25, 2008, Crumbo filed an objection to accounting and motion for hearing citing various deficiencies with Haehl's filing. On May 28, 2008, Haehl filed a Verified Final Accounting, and on September 17, 2008, Crumbo filed an Objection to Revised Accounting noting that the accounting still "fail[ed] to cover the entire period of time covered by the trust." *Id.* at 199. The CCS contains the following entry, dated November 26, 2008:

> Successor Trustee by Steven Palmquist B Haehl by M Maschmeyer Court meets with counsel in chambers Objection to Accounting discussed statutory law discussed. Parties to obtain additional information regarding SLT account and IRA. Succ. Tr. to obtain financial information as to funding of trust from estate attorney or personal reps records Mr Maschmeyer to initiate status conference call on 1/9/2009 at 11:15 am due to court congestion court continues hearing on objections to accounting to be rescheduled at telephonic conference. Copy of C/C/S to counsel of record . . . .

*Id.* at 3.

On September 25, 2009, David filed a motion for award of attorney fees under Ind.Code § 30–4–3–22(e) "due to [his] suc-

cessful action to compel Mr. Haehl to perform his duties." *Id.* at 201. On October 13, 2009, Haehl filed a motion for compensation and attorney fees "for his time, expense, and fees incurred herein." *Id.* at 202. On January 8, 2010, Haehl filed an Amended Verified Final Accounting which "update[d] the Court on some clerical changes to the prior accounting which [David's] counsel has already been made aware of," and which included "the period 2001 to 2003, which previously [Haehl] did not have statements covering that period." *Id.* at 204.

On January 22, 2010, the court held a hearing on the competing fee requests and to approve Haehl's Amended Verified Final Accounting. At the hearing, Haehl testified that he believed that the trust language stated that he "didn't have to do . . . . any particular type of an accounting" during his time managing the trust assets. Transcript at 35. Haehl stated that "[e]very month since 2001 [David] has received a monthly statement of the assets that were inside of the trust and all movements, changes, and everything." *Id.* at 36. Haehl also indicated that the documents in the original final accounting he filed were "essentially year-end statements . . . from the years . . . 2003 through 2007." *Id.* at 68.

Haehl testified that when he received the September 5, 2007 letter from David's counsel, he was not "provided [ ] with enough information to make [him] feel comfortable that it was the right move to do . . . ." *Id.* at 37. Haehl testified that he had concerns about Crumbo as successor trustee, including that "she is a remainder beneficiary of the trust" and that "based on [Haehl's] credentials, [he] felt that [he] could do a better job . . . than she could."

4. The court ordered that Haehl transfer the trust assets to Crumbo "on or before January 6, 2008," and that he file a final accounting with David's counsel "not later than February 5, 2008." Appellant's Appendix at 7.

*Id.* at 89. He also noted that the trust required "a corporate trustee," and because she was not such he "felt that there was no way that she should become trustee...." *Id.* On cross-examination, Haehl admitted that the trust provided that the income beneficiary could remove the trustee and that it did not provide that the trustee could choose its successor trustee.

Haehl testified that, with regard to the court's order that he prepare a final accounting, he "thought that [it] was more form than substance because [David] had been receiving monthly statements for the last seven (7) years...." *Id.* at 39. Haehl testified that he "diligently worked" to respond to the objections filed by Crumbo, and that one objection cited regarding a "STL account" was "a sweep account of David Montgomery and [Haehl] had no" control over that account. *Id.* at 40. Haehl also testified that Crumbo requested for him "to get the old records, meaning those records prior to 2003 that were shown by the previous accounting," and that "[a]fter continuous attempts [he] finally got to the right person and they found it on microfiche," and Haehl included those in his Amended Verified Final Accounting. *Id.* at 58–59.

Haehl testified that he spent approximately eighty-nine hours since November 2007 working on the final accounting. Haehl testified that he believed he was entitled to additional compensation because "all [he was] doing is going back and proving that [he] did nothing wrong in the first place," and that "[t]here's been no objections filed claiming mismanagement of funds...." *Id.* at 61–62. Haehl also testified that his one percent annual fee

was "an all encompassing thing," and that "whatever [he] had to do was covered by that percentage fee." *Id.* at 87. Haehl acknowledged that he was paid $1,321 pursuant to the court's 2007 Order. Haehl's counsel also admitted an affidavit representing Haehl's attorney fees totaling thirty-six hours at $195 per hour.

David testified that he sought Haehl's removal in 2007 because there was a "lack of communication" with Haehl after Haehl left his former employer and moved to Arizona without notifying David.[5] *Id.* at 96. David testified that the initial Final Accounting filed by Haehl was incomplete and that the second Final Accounting "did not include 2001 through September of 2003." *Id.* at 98. David testified that Haehl's testimony at the hearing explained any outstanding concerns with the Amended Verified Final Accounting and that he was satisfied with that explanation.[6] On cross-examination, David admitted that he never accused Haehl of mismanagement of the trust or questioned the reasonableness of his fees. David also acknowledged "receiving some statements" as far back as December 2001. *Id.* at 114.

David's counsel testified regarding his attorney fees that, between 2007 and 2009, he billed David for a total of $15,230. The court took the matter under advisement.

On February 11, 2010, the court entered its 2010 Order. In the 2010 Order, the court approved Haehl's final accounting. The 2010 Order noted that although the trust relieved Haehl of filing "routine 'Court accountings ... required by the statutes,'" that provision did not "relieve the Trustee from providing [David] with

---

5. Haehl also testified at the hearing that he currently resided in Ohio and had taken a sabbatical from practice in 2004.

6. At one point in the hearing, the court asked David's counsel if he had "any question that the assets have not been accounted for," and David's counsel replied: "We have a couple of questions.... I suspect that the answer will explain the money we can't find. We do not believe there was any theft or misplacement of funds." *Id.* at 48.

an annual written statement...." Appellant's Appendix at 10. The 2010 Order found that "[t]he proceedings to docket the Trust and remove [Haehl] were necessary as Mr. Haehl testified that he refused to withdraw as Trustee after being given written notice...." *Id.* It also found that Haehl was required to maintain clear and accurate accounts and provide such information to David upon request, that Haehl "did not do this" because the only documents were the statements generated by Securities America, and that if Haehl had maintained such records "the necessity of the docketing of the trust and the Court's Order directing him to file on [sic] accounting might have been avoided." *Id.* at 10–11. The court found that Haehl "[o]therwise ... performed his duties ... in a prudent manner...." *Id.* at 11. Regarding the competing fee requests, the court made the following findings:

5. With respect to Mr. Haehl's request for fees, expenses and attorney fees, he testified that he was compensated as set out in the Court's [2007 Order]. His present request apparently covers the period of time of the transfer of assets to the present trustee and the attorney fees he has incurred since such transfer. Petitioner's Exhibits 8 and 9.

6. The Court has considered the provisions of I.C. 30–4–5–16, I.C. 30–4–3–3 and I.C. 30–4–5–11 as they relate to the fee and expense requests of Mr. Haehl and Mr. Maschmeyer. The Court has also considered the factors set out in the case of *In Re the Trust Created under the Last Will and Testament of John E. Mitchell, deceased,* 788 [N.E.2d 433 (Ind.Ct.] App.2003) and cases cited thereunder. Because this case was initiated by the beneficiary to remove Mr. Haehl as Trustee as Mr. Haehl would not voluntarily step down after notice and this litigation was unnecessarily prolonged due to Mr. Haehl's not maintaining accurate accounts and information as required by law. The Court concludes that Mr. Haehl is not entitled to payment of additional fees or expenses and further is not entitled to recover the attorney fees he has incurred in defending this litigation.

7. With respect to [Appellees'] request for an award of attorney fees, I.C. 30–4–3–22(e) provides that if a beneficiary successfully maintains an action under subsection (a), he is entitled to a judgment for reasonable attorney fees. Under I.C. 30–4–3–22(a)(1) a beneficiary has the right to maintain an action to compel the Trustee to perform his duties. In this case, it was necessary for Mr. Montgomery to bring this action to force Mr. Haehl to resign and to take steps to ensure the accounting filed by Mr. Haehl was accurate. The fees incurred by Mr. Montgomery and the Successor Trustee with Kightlinger and Gray per the testimony of Stephen K. Palmquist over a two and a half (2 ½) year period of $15,230.00 are reasonable. The Court concludes that [Appellees] are entitled to a judgment against Brian Haehl in the amount of $15,230.00 plus the costs of the action.[7]

*Id.* at 11–12.

On March 15, 2010, Haehl filed a motion to correct errors, and on June 3, 2010, the court held a hearing on Haehl's motion. On June 8, 2010, the court denied Haehl's motion. On October 23, 2010, David turned thirty-five years old and thus, under the trust, became entitled to "the remaining principal balance of the trust and any undistributed income." *Id.* at 19.

I.

■ The first issue asserted by Haehl is whether the court abused its discretion

---

7. The total amount awarded to Appellees was $15,383.00. Appellant's Appendix at 13.

when it removed Haehl as trustee and, upon modifying the trust, appointed Crumbo as successor trustee. However, as noted above, because David, the sole income beneficiary, has attained the age of thirty-five years, "the Trust is presently in the process of terminating and winding down." Appellees' Brief at 6 n. 4. It is a long-standing rule in Indiana courts that "[w]hen the concrete controversy at issue in a case 'has been ended or settled, or in some manner disposed of, so as to render it unnecessary to decide the question involved,'" that issue may be deemed moot. *Matter of Lawrance*, 579 N.E.2d 32, 37 (Ind.1991). Moreover, we note that Haehl does not ask for any damages or remedy based solely on whether the court abused its discretion when it modified the trust, removed Haehl as trustee, and appointed Crumbo as successor trustee. Therefore, recognizing that we can no longer provide relief to Haehl regarding the modification of the trust and his removal as trustee, we find this issue to be moot.[8] However, to the extent that the factual underpinnings of this issue bear on the fee issues, they will be discussed below. *Cf. Steuben Lakes Reg'l Waste Dist. v. Tucker*, 904 N.E.2d 718, 721 (Ind.Ct.App.2009) (noting that although the underlying factual issue was moot before a complaint was filed, because issues including the "connection charge, litigation costs and attorney fees arising out of" the factual issue remained unresolved "it was proper for the trial court to consider the facts of the case to resolve these issues").

## II.

The second issue is whether the court erred when it awarded attorney fees

in favor of the Appellees and denied Haehl's request for additional compensation and attorney fees. Where, as here, a trial court enters findings of fact and conclusions of law, first we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment. *Zukerman v. Montgomery*, 945 N.E.2d 813, 818 (Ind.Ct. App.2011). The specific findings control only as to the issues they cover, and a general judgment standard applies to issues upon which the trial court made no findings. *Id.* When making this determination, we neither reweigh the evidence nor assess the credibility of the witnesses. *Id.* We review questions of law *de novo* and owe no deference to the trial court's legal conclusions. *Id.*

Here, Haehl challenges: (A) the court's denial of additional compensation and attorney fees in favor of Haehl; and (B) the court's award of attorney fees in favor of the Appellees.

### A. *Haehl's Request for Additional Compensation and Attorney Fees*

First, Haehl argues that "[g]iven that the Trust was improperly modified and Haehl was erroneously removed as trustee in a manner violative of the express provisions of the Trust, it was [ ] error for the trial court to deny Haehl's application for compensation and expenses in accordance with the express terms of the Trust." Appellant's Brief at 25. We address separately the issues of (1) attorney fees; and (2) additional trustee compensation.

---

8. Indeed, were we to reverse the trial court's modification of the trust, which allowed Crumbo or any other individual to serve as trustee, there would nevertheless be no need to remand and order the re-appointment of Haehl or the appointment of another corporate trustee because the trust no longer requires the services of a trustee. Similarly, were we to reverse the court's order removing Haehl, there currently does not exist a trustee position for this court to re-appoint Haehl for the benefit of David.

## 1. *Attorney Fees*

In his brief, Haehl notes that he "incurred attorney fees of $7,020.00 in taking actions necessary to complete the demanded final accounting." Appellant's Brief at 26. Haehl argues that "there is no probative evidence of substantial value in the record on which it can reasonably be concluded that Haehl acted 'badly.'" *Id.* at 28. The Appellees argue that "[a]t the very least, Haehl was negligent for not resigning (and for not complying with Indiana's law on trustee accountings)." Appellees' Brief at 36.

As recognized by the trial court and the parties, this court has addressed the issue of whether a trustee may recoup attorney fees when it defends against a removal action brought by the beneficiary in *In re Mitchell,* 788 N.E.2d 433 (Ind.Ct.App. 2003). *Mitchell* noted that the trial court has discretion to award attorney fees to a trustee defending an action brought by a beneficiary. 788 N.E.2d at 436–437. Indeed, the Indiana Supreme Court has held "that the award or denial of the reimbursement of attorney fees from a trust to a trustee is 'in the exercise of a sound discretion, and in the absence of an affirmative showing of error or abuse of discretion we must affirm [the trial court's] order.'" *Id.* at 437 (quoting *Malachowski v. Bank One,* 682 N.E.2d 530, 533 (Ind.1997) (quoting *Zaring v. Zaring,* 219 Ind. 514, 523, 39 N.E.2d 734, 737 (1942)), *reh'g denied*). Additionally, "[t]he right to compensation at the cost of the estate should not depend upon the result of the litigation but rather upon the reasonable necessity for such litigation." *Id.* (quoting *Malachowski,* 682 N.E.2d at 533). Also, "[a] trustee may be precluded from recovering attorney fees from the trust if the litigation arose because of the misconduct and/or negligence of the trustee." *Id.*

The *Mitchell* court also recognized the following factors we may consider when determining whether litigation was reasonably necessary and therefore whether an award of attorney fees to a trustee is appropriate:

[W]hether the trustee acted reasonably and in good faith; whether the litigated issue is of little or momentous consequence to the estate or its beneficiaries; whether the facts are undisputed or are so controversial as to require an adversary proceeding for their determination; whether the legal questions are simple or complex, settled by precedent, or open to serious debate; and any other matters bearing upon the reasonableness or the necessity for the litigation and the employment of attorneys.

*Id.* (citing *Malachowski,* 682 N.E.2d at 533 n. 3 (quoting *Zaring,* 219 Ind. at 523, 39 N.E.2d at 737)).

In this case, we begin by recognizing that the trust in Item 5(L) granted David, as the sole income beneficiary, sole discretion to remove the trustee provided that: 1) David supply Haehl with a written request to resign; and 2) the successor trustee acknowledges written acceptance of its appointment to the existing trustee and its willingness to serve. The trust also required that a successor trustee "be a financial institution or other form of corporate trustee." Appellant's Appendix at 23. On September 21, 2007, David filed a petition to docket the trust with the court to effect Haehl's removal as trustee. *Id.* at 15–16. The trial court recognized David's trustee removal authority in its CCS entry dated November 7, 2007. *Id.* at 2. Once Haehl was removed, he was ordered by the court to file a final accounting by February 5, 2008. With this in mind, in its 2010 Order, the court denied Haehl's attorney fee request "[b]ecause this case was initiated by the beneficiary to remove Mr. Haehl as Trustee as Mr. Haehl would not voluntarily step down after notice and this litigation

was unnecessarily prolonged due to Mr. Haehl's not maintaining accurate accounts and information as required by law." *Id.* at 11.

Here, recognizing again that the Trust granted David discretion to remove the trustee, regardless of the issues arising out of the court's modification of the trust allowing an individual to serve as trustee and Haehl's removal thereunder, we may adequately review this issue by examining Haehl's response to the court's order that he perform a final accounting. Indeed, as noted above Haehl's request for attorney fees was based upon the actions taken "to complete the demanded final accounting." Appellant's Brief at 26. Also the trial court, at the January 22, 2010 hearing, discussed Haehl's duty to file a final accounting in this context:

> Well, it seems to me that if [Haehl] would have just voluntarily resigned upon request . . . there would have been an accounting requested by someone . . . there still would have been, in all likelihood, a Court proceeding to obtain the records and to get the detailed accounting. . . .

Transcript at 91.

Evidence adduced at the January 22, 2010 hearing supports the trial court's findings that Haehl did not "maintain clear and accurate accounts with respect to the trust estate" and was unable "upon reasonable request [to] give [David] complete and accurate information concerning any matter related to the administrator of the trust," and that this failure to maintain clear and accurate accounts "unnecessarily prolonged" the litigation. Appellant's Appendix at 10–11. Haehl admitted that he believed that the trust language stated that he "didn't have to do . . . . any particular type of an accounting" during his time managing the trust assets, and that with regard to the court's order that he prepare a final accounting, he "thought that [it]

was more form than substance because [David] had been receiving monthly statements for the last seven (7) years" which had not been prepared by Haehl but rather by the investment companies used to manage the trust assets. Transcript at 35, 39. Haehl also admitted that he had not maintained records during 2001 and 2002, but that "[a]fter continuous attempts [he] finally got to the right person and they found it on microfiche," and Haehl included those in his Amended Verified Final Accounting. *Id.* at 59.

■ Item 5(F) of the trust "relieved" Haehl "from any requirement as to *routine Court accountings* that may now or hereafter be required" by law. Appellant's Appendix at 22 (emphasis added). This clause in the trust waived Haehl's potential duty to file accountings with the court under Ind.Code § 30–4–5–12(d) or under similar future provisions in the trust code. However, Item 5(F) did not obviate Haehl's duty as trustee to maintain clear and accurate accounts as the trust code contains multiple sections for which this is required. Indeed, Ind.Code § 30–4–3–6, which lists the duties of the trustee, provides that the trustee has a duty to "[m]aintain clear and accurate accounts with respect to the trust estate." I.C. § 30–4–3–6(b)(6). *See also* Ind.Code § 30–4–5–12(a) ("[T]he trustee shall deliver a written statement of accounts to each income beneficiary or his personal representative annually."); Ind.Code § 30–4–3–6(b)(7) (The trustee has a duty to "[u]pon reasonable request, give the beneficiary complete and accurate information concerning any matter related to the administration of the trust and permit the beneficiary or the beneficiary's agent to inspect the trust property, the trustee's accounts, and any other documents concerning the administration of the trust."); Ind.Code § 30–4–5–12(c) ("Upon petition . . . the

court may direct the trustee to file a verified written statement of accounts...."). Thus, based upon Haehl's failure to maintain clear and accurate accounts, we find that the litigation filed by the Appellees was reasonably necessary in order to obtain from Haehl a final accounting of the trust assets after Haehl had been removed as trustee.

In so holding, we note that the *Zaring* factors support this conclusion. In particular, we cannot say that procuring a Final Accounting of the trust assets was of little consequence to David. Also, Haehl's failure to produce an adequate Final Accounting between November 2007 and January 2010 left the Appellees with factual questions that were not fully explained until Haehl's testimony at the January 22, 2010 hearing. Although we do not find evidence presented demonstrating a lack of good faith on Haehl's part, his failure to maintain clear and accurate records, rendering Haehl unable to produce such records in a timely fashion, reasonably necessitated the employment of attorneys by David in order to procure such records for the successor trustee. Accordingly, we conclude that the court did not err or abuse its discretion when it decided to not award attorney fees to Haehl.

### 2. *Additional Trustee Compensation*

Haehl argues that "unrebutted testimony established that it [sic] he devoted some 89 hours since removal as trustee to completing the accounting demanded by [the Appellees] and the trial court in excess of the requirements of the Trust and applicable Indiana law...." Appellant's Brief at 25. Haehl argues that Ind.Code § 30-4-5-16 provides a mechanism by which he may be awarded additional compensation for these services. The Appellees argue that "the express terms of the Trust did not relieve Haehl from filing the final accounting required," and thus the court's order to file the final accounting "was not

'in excess' of Haehl's trustee responsibilities." Appellees' Brief at 32. The Appellees argue that Haehl has historically paid himself as a corporate trustee under Item 5(H) of the Trust and has "never computed his trustee compensation according to an hourly rate...." *Id.* at 33. The Appellees argue: "Haehl cannot have it both ways. In periods where he is doing very little for the Trust ... he cannot take a percentage fee.... Yet, in periods where he is required to invest more time and effort to complete trust accountings, he cannot claim entitlement to an hourly rate...." *Id.* at 33-34.

As noted above, Item 5(H) of the trust set forth how a trustee was to be compensated:

H. Any *Corporate* Trustee shall be entitled to reasonable compensation for services rendered in administering and distributing the Trust property in accordance with its established schedule of fees in effect from time to time during the period of its administration of this Trust and to reimbursement for expenses.

Any *individual* Trustee shall be entitled to reasonable compensation for services rendered in administering and distributing the Trust property in accordance with an hourly rate for the services rendered and to reimbursement for expenses.

Appellant's Appendix at 22 (emphasis added). At both the November 2, 2007 hearing and the January 22, 2010 hearing, evidence was presented demonstrating that Haehl had been paid for his services as a corporate trustee. At the November 2, 2007 hearing, Haehl testified that he was compensated by the trust as a corporate trustee and that he charged one percent of the fair market value of the "assets that are not in the cash account already ready to be distributed to" David as an annual

fee. Transcript at 26. Haehl explained that he was paid one-half of one percent every six months on every December 30th and June 30th. Also, at the January 22, 2010 hearing, Haehl testified that his one percent annual fee was "an all encompassing thing," and that "whatever [he] had to do was covered by that percentage fee." *Id.* at 87.

In its 2007 Order, the court ordered the following:

> 1) That Brian Haehl was properly removed as Trustee. He shall transfer the assets of the . . . Trust to the Successor Trustee named below, on or before January 6, 2008. Mr. Haehl shall pay himself a fee as Trustee equal to two-thirds (2/3) of one-half (1/2) of one (1%) percent of the fair market value of the . . . Trust invested assets as of the date of such transfer. Mr. Haehl shall file a Final Accounting with counsel for the petitioner and this Court not later than February 5, 2008.

Appellant's Appendix at 7. At the January 22, 2010 hearing, Haehl acknowledged that he was paid $1,321 pursuant to this provision in the 2007 Order.

■ As cited by the parties, Ind.Code § 30–4–5–16 governs the right to compensation and provides:

> (a) Unless the terms of the trust provide otherwise, and except as provided in section 17 of this chapter, the trustee is entitled to reasonable compensation from the trust estate for acting as trustee.
>
> (b) If the terms of the trust specify the trustee's compensation, the trustee is entitled to be compensated as specified, but the court may allow more or less compensation if:
>
>> (1) the duties of the trustee are substantially different from those contemplated when the trust was created; or
>>
>> (2) the compensation specified in the terms of the trust would be unreasonably low or high.

Thus, the statute gives the trial court discretion to award a trustee additional compensation depending on the circumstances. Here, the court in its 2010 Order stated that Haehl "testified that he was compensated as set out" in the court's 2007 Order and that "[h]is present request apparently covers the period from the time of the transfer of assets to the present trustee. . . ." Appellant's Appendix at 11. However, as noted above, the court determined that "this litigation was unnecessarily prolonged due to Mr. Haehl's not maintaining accurate accounts and information as required by law." *Id.* Also, as noted above, although Item 5(F) of the trust waived requirements under Indiana law that the trustee file "routine Court accountings," as the trial court recognized in its 2010 Order, that provision did not "relieve the Trustee from providing 'the income beneficiary' with an annual written statement of accounts under I.C. § 30–4–5–12(a)." *Id.* at 10, 21. Also, this provision did not waive the requirement that a trustee prepare a final accounting. Based upon the foregoing, we conclude that the court did not err in denying Haehl's request for additional compensation.

B. *Court's Award of Attorney Fees in Favor of Appellees*

Second, Haehl argues that the court erred in awarding attorney fees in favor of the Appellees based upon Ind.Code § 30–4–3–22(e). Ind.Code § 30–4–3–22, titled "Remedies of the beneficiary against the trustee," provides in relevant part:

> (a) A beneficiary of a trust may maintain an action:
>
>> (1) to compel the trustee to perform his duties;

(2) to enjoin the trustee from committing an act which may be a breach of trust;

(3) to compel the trustee to redress a breach of trust; or

(4) to remove a trustee for cause and to appoint a successor trustee.

\* \* \* \* \* \*

(e) If a beneficiary successfully maintains an action under subsection (a) of this section ... he is entitled to a judgment for reasonable attorney's fees.

In its 2010 Order, the court found that "it was necessary for [David] to bring this action to force Mr. Haehl to resign and to take steps to ensure the accounting filed by Mr. Haehl was accurate." Appellant's Appendix at 12. The court awarded the Appellees attorney fees totaling $15,230 plus costs, basing the award on paragraph (a)(1) which gives "a beneficiary ... the right to maintain an action to compel the Trustee to perform his duties." Id.

Haehl argues that evidence was not presented that the Appellees "had ever accused Haehl of failing to perform any of his duties as trustee prior to the date of the filing" of their motion for award of attorney fees on September 25, 2009, which was "some ten (10) months after the entry of the Removal Order." [9] Appellant's Brief at 19–20. Haehl argues that the court's "insistence [in its 2010 Order] that Haehl failed to properly resign in the absence of [David] presenting evidence that a financial institution or other form of corporate trustee had been retained as his successor is particularly troubling." Id. at 22–23. Haehl argues that "had [David] taken the steps required by the Trust to obtain Haehl's proper removal" the court's finding awarding fees "may have been reasonable," but "[g]iven [David's] total fail-

ure to take such steps ... it is incongruous that the trial court would assign liability to Haehl for insisting that the settlor's intent be honored." Id. at 23.

The Appellees argue that "[u]nder Indiana law, an income beneficiary who successfully maintains an action to remove a trustee is *entitled* to a judgment of reasonable attorney fees. This statutory provision is mandatory." Appellees' Brief at 28 (citation omitted). The Appellees argue that "because David's action to remove Haehl as trustee was successful, the Court's award of fees to David was proper—indeed required." Id. at 29. The Appellees also argue that "the attorney fee award ... was within the trial court's discretion and should be affirmed" because the evidence presented demonstrated "that Haehl failed to fulfill his trustee obligations by refusing to resign after he was requested to do so ... and ... by failing to timely provide a complete accounting, after being ordered to do so by the trial court." Id. The Appellees note that Haehl "had the obligation to account to David on an annual basis" and that the "monthly statements provided to David by American Express and Securities America" did not satisfy this accounting requirement because they "did not contain the requisite information needed for an accounting under Indiana Code Section 30–4–5–13." Id. at 30.

As noted above, the trial court awarded attorney fees in the Appellees' favor, reasoning that it was necessary for them to bring an action to compel Haehl to perform his duties and pointing to Haehl's failure to resign and perform an accurate accounting as the bases of its ruling. The court awarded $15,230 in fees which was for services spanning two-and-a-half years.

9. The Appellees' motion asked for "an award of attorney fees under I.C. 30–4–3–22(e), due to petitioner's successful action to compel Mr.

Haehl to perform his duties." Appellant's Appendix at 201.

■ We observe that David's actions in 2007 were based upon his desire to remove Haehl as trustee and appoint Crumbo, his mother, as successor trustee because the trust would save a net 2.15 percent in total yearly fees. In seeking Haehl's removal, David did not suggest that Haehl had refused to provide an accounting or otherwise not perform his trustee duties in a satisfactory manner.[10] David's September 5, 2007 letter to Haehl requested that Haehl resign pursuant to Item 5(L) of the Trust, noting that it "gives [David] the authority to remove [Haehl] as Trustee...." Exhibits at 4. In the court's September 24, 2007 order authorizing docketing of the trust with court, the court stated explicitly that it was assuming "limited jurisdiction over the corpus of said trust ... for the sole purpose of determining whether Brian Haehl should be removed as Trustee and a Successor Trustee be named," and it set the matter for hearing on November 2, 2007. Appellant's Appendix at 27. Thus, any accounting issues arose subsequent to David's initiation of the action to remove Haehl, and therefore we cannot say that David maintained an action under Section 22 to compel Haehl to provide an accounting to the Appellees.

■ To the extent that Haehl's failure to resign can be classified as a failure to perform his duties as trustee, we note that Item 5(L) of the trust mandated that David provide the trustee seeking to be removed with a written request to resign, that the successor trustee provide written acceptance of its appointment to the existing trustee and its willingness to serve, and that the successor trustee be a financial institution or other form of corporate trustee. Although David provided Haehl with a written request that Haehl resign, it is undisputed that the other two requirements had not been met as of the November 2, 2007 hearing on whether Haehl should be removed. Indeed, at issue at the hearing was whether the court should modify Item 5(L) in order to allow an individual trustee to be appointed as successor trustee. Thus, we cannot say that Haehl's failure to resign upon receiving David's September 5, 2007 letter, especially under the circumstances of the requirements in the trust regarding the removal of a trustee, constituted a failure to perform his trustee duties, and as such we find that any attorney fee award upon this basis was error.

■ Moreover, regarding Haehl's removal, even if the court based the fee award upon Ind.Code § 30–4–3–22(a)(4), which allows for actions by the beneficiary to remove the trustee for cause, we note that Haehl's removal was based upon David's discretionary power granted to him under Item 5(L) of the trust rather than for cause. At the November 2, 2007 hearing, David's counsel cited Ind.Code § 30–4–3–29, which he stated "provides powers for beneficiaries to remove trustees and that in this case mirrors this trust. *There is no provision of cause or anything like that, we 're not interested in getting into those reasons, it's an automatic right the beneficiary has....*" Transcript at 14–15 (emphasis added). Ind. Code § 30–4–3–29 provides:

> (a) A trustee may be removed as follows:

---

10. We note that, at the January 22, 2010 hearing, Haehl testified:

> I started out with three hundred and fifteen thousand dollars ($315,000.00), I paid [David], over a seven (7) year period, a hundred thousand dollars ($100,000.00) in income and the trust still made a hundred thousand dollars ($100,000.00) over and above that and that's after trustee fees, advisory fees, [and] federal taxes paid.
> Transcript at 63–64.

(1) By the court.

(2) By the person, if any, who by the terms of the trust is authorized to remove the trustee.

Ind.Code § 30–4–3–22(a), by contrast, provides remedies for a beneficiary against a trustee whom the beneficiary believes is in dereliction of his duties as trustee and, as one such remedy, allows a beneficiary to maintain an action to remove a trustee *for cause* and appoint a successor trustee. Comments from the Trust Code Study Commission regarding § 22 note that subsection (a) was based upon the Restatement (second) of Trusts, § 199 (1959), which notes in its comments that "[t]he court will remove a trustee if he has committed a sufficiently serious breach of trust or if it is probable that he will commit such a breach of trust or where for any other reason his continuance as trustee is likely to be detrimental to the interest of the beneficiary." Restatement (second) of Trusts, § 199 cmt. e (1959); *see generally* 28 I.L.E. *Trusts* § 175 (2011) (noting that "[a] trustee may be removed for cause," and citing 28 I.L.E. *Trusts* § 87 (2011) for an explanation of what constitutes cause) [11]; *Dillman v. Trustees of Ind. Univ.*, 848 N.E.2d 348, 349–350 (Ind.Ct.App.2006) (noting the dichotomy between removal for cause and no-cause removal), *trans. denied.*

David petitioned the court to remove Haehl based upon Item 5(L) of the trust and Ind.Code § 30–4–3–29 and not for cause. In David's motion for award of attorney fees, he summarily asserts that he was moving "the Court for an award of attorney fees under I.C. 30–4–3–22(e), due to petitioner's successful action to compel Mr. Haehl to perform his duties." We note, however, that this was David's first invocation of Section 22 during the litigative process, and in fact the record reveals that David did not allege in 2007 that he was bringing an action to compel Haehl to perform trustee duties. To that end, any failure to provide an adequate accounting by Haehl was a resultant circumstance from his removal pursuant to David's petition. Thus, under the circumstances and because David did not maintain an action under Section 22, we conclude that the court's award of attorney fees under Ind. Code § 30–4–3–22(e) was erroneous.[12]

For the foregoing reasons we affirm the court's denial of attorney fees and additional compensation in favor of Haehl, reverse the court's award of attorney fees in favor of the Appellees, and remand for the court to revise its 2010 Order consistent with this opinion.

---

**11.** Section 87 of the Indiana Law Encyclopedia notes:

Grounds for removal include, but are not limited to:
- lack of capacity to administer the trust
- commission of a serious breach of trust
- refusal to give a bond, if one is required
- refusal to account
- commission of a crime, particularly one involving dishonesty
- unfitness, whether due to old age, habitual drunkenness, want of ability or other cause
- permanent or long-continued absence from the state
- the showing of favoritism to one or more beneficiaries
- unreasonable or corrupt failure to cooperate with cotrustees

28 I.L.E. *Trusts* § 87 (2011) (citations omitted).

**12.** We note that on cross-appeal the Appellees request appellate attorney fees pursuant to Ind.Code § 30–4–3–22(e). We recently held that Ind.Code § 30–4–3–22(e) was "broad enough to encompass reasonable appellate attorney fees." *In re Riddle*, 946 N.E.2d 61, 71 (Ind.Ct.App.2011). However, because we hold that David's action was not pursuant to Section 22, we decline to award appellate attorney fees.

Affirmed in part, reversed in part, and remanded.

ROBB, C.J., and RILEY, J., concur.